UNITED STATES of America, Plaintiff-Appellee,

v.

Max Allen ELLISON, Defendant-Appellant.

No. 85–1930.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 28, 1986.

Decided Aug. 21, 1986.

Michael B. Nash, Chicago, Ill., for defendant-appellant.

David E. Risley, Asst. U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before CUDAHY, COFFEY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Defendant Max Allen Ellison appeals from the district court's denial of his motion to withdraw his pleas of guilty prior to acceptance of the plea agreement by the court. The district court's decision is reversed and remanded for further proceedings.

Defendant was charged in three separate indictments with kidnapping, receiving ransom money, violating the Hobbs Act, interstate transportation of a firearm to commit a felony, carrying a firearm in a federal crime of violence, interstate transportation

of stolen property, and attempted escape. Counsel was appointed and defendant initially pleaded not guilty to all charges. Defendant then entered into a plea agreement with the government whereby he agreed to plead guilty to charges of kidnapping and carrying a firearm in a crime of violence, interstate transportation of stolen property, and attempted escape. In exchange, the government agreed to dismiss the remaining charges in the indictments and to not recommend consecutive sentences. Other than this restriction on sentencing, the parties were free to recommend whatever sentences they deemed appropriate. On March 19, 1985, defendant, as agreed, entered pleas of guilty to the four charges. After questioning the parties and the attorneys in substantial compliance with Federal Rule of Criminal Procedure 11,[1] the district court accepted the guilty pleas but deferred its decision of whether to accept the plea agreement.

Three days prior to sentencing, the defendant sent the court a letter which the court construed as a motion to withdraw his guilty pleas pursuant to Federal Rule of Criminal Procedure 32(d). Defendant alleged that his pleas of guilty had resulted from the psychological pressures of soli-

1. Rule 11 requires the court to employ the following procedures:

(c) **Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole term; and

(2) if the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

(3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) that if his plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

(5) if the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which he has pleaded, that his answers may later be used against him in a prosecution for perjury or false statement.

(d) **Insuring That the Plea Is Voluntary.** The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or his attorney.

tary confinement, the exclusion from family and friends, and the advice of his court-appointed attorney "that an immediate guilty plea would place [him] in better and more humane living conditions and renew my contact with family and friends." Although defendant had difficulty "pleading guilty to charges I do not consider myself guilty of," his counsel allegedly advised defendant that he, the attorney, would have to work with the "federal people" in the future and that, therefore, it was "best not to make waves when there is little if any chance of fighting Federal Prosecutors."

. The court conducted a hearing on defendant's motion prior to sentencing. Counsel for defendant denied the accusations against him. Defendant maintained his innocence and stated that, at the time of the pleas, he would have pled guilty to "treason" for an opportunity to see his son once more. The court denied defendant's motion. The court noted that defendant had been adequately represented by counsel at the time the guilty pleas had been entered and that defendant was a person of normal understanding and intelligence. The court further found:

The written plea agreement which the Defendant acknowledged that he read and signed, it set out in great detail the particular facts of each of the counts, and the indictments to which he pled guilty. Moreover, those—each of those counts were described and explained and admitted to by the Defendant during the plea hearing.

I found then, and I find now, that he understood and understands the nature of the charges against him, and I find that he was adequately instructed as to the consequences of his plea, and that a factual basis for that plea was established, and I further find that the Defendant has failed to present any reason which would allow the withdrawal of his guilty pleas.

Further, a great deal of very precious Court time was spent on the taking of that—those pleas, and again, it was entered by the Defendant with full knowledge of the facts, a fair warning of the consequences, and with exhaustive reflection on the part of the Defendant and his lawyer. . . .

(Tr. 9–10, March 19, 1985).

 Defendant first argues on appeal that the plea agreement is contractual in nature and that, because the court had not yet accepted or rejected the agreement, there was no contract and therefore he was not bound by the agreement. According to defendant, he had the right to withdraw his guilty plea until the court accepted the plea agreement. Defendant's contract analysis is erroneous and disregards the clear language of Rule 32(d). His argument implies that the court is a party to the contract, which is not correct. Defendant and the government, having made mutual promises, were the only parties to the contract. Defendant pled guilty pursuant to his promise to the government and, absent some breach by the government, now cannot attempt to repudiate the contract unless he does so pursuant to Rule 32(d).

 Under Rule 32(d), "a court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." Fed.R.Crim.P. 32(d). The defendant has the burden of demonstrating valid grounds justifying withdrawal. *United States v. Thompson*, 680 F.2d 1145, 1151 (7th Cir.1982), *cert. denied*, 459 U.S. 1089, 103 S.Ct. 573, 74 L.Ed.2d 934 (1983). Although the standards for granting a Rule 32(d) motion prior to sentencing are fairly liberal, *United States v. Teller*, 762 F.2d 569, 574 (7th Cir.1985), the decision is within the sound discretion of the trial court and will not be reversed except upon an abuse of discretion. *United States v. Fountain*, 777 F.2d 351, 358 n. 3 (7th Cir. 1985); *United States v. Suter*, 755 F.2d 523, 525 (7th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985); *United States v. Thompson*, 680 F.2d at 1151. The trial court's findings on the issue will be upheld unless clearly erroneous. *Suter*, 755 F.2d at 525.

Despite Rule 32(d)'s unambiguous "fair and just" standard, defendant maintains that Federal Rule of Criminal Procedure 11 requires application of a different standard for withdrawal of guilty pleas entered pursuant to plea agreements that have not yet been accepted by the court. Rule 11(e)(1), in recognizing three different types of plea agreements, provides:

The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.

Fed.R.Crim.P. 11(e)(1). The last sentence of Rule 11(e)(2) provides that if the agreement is of the type specified in subdivision (e)(1)(B), the court must "advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has *no right* to withdraw his plea." Fed.R.Crim.P. 11(e)(2) (emphasis added). Defendant argues that because a defendant entering into a type B agreement "has no right to withdraw his plea" if the agreement is rejected by the court, then *a fortiori* defendant entering into a type A or C agreement must have a right to withdraw a plea until the plea agreement is accepted by the court.[2] Otherwise, according to defendant, the last sentence of Rule 11(e)(2) would be meaningless.

Rule 11(e)(2) must be read in context. The Rule does not set forth the circumstances under which a plea may be withdrawn. Rule 11(e)(2) is merely a reminder that a defendant who enters a type B agreement that is rejected does not have the same rights as a defendant who enters into a type A or C agreement that is rejected. Because the defendant who enters into a type A or C agreement does not receive the "bargained-for concessions" if the court does not accept the plea agreement, Rule 11(e)(4) guarantees that defendant will have the opportunity to withdraw his plea upon rejection of the agreement. In contrast, fulfillment of a type B agreement is not contingent upon any action by the court. A prosecutor's duties under a type B agreement are discharged when the prosecutor either recommends or does not oppose a particular sentence. Thus,

[b]ecause a type (B) agreement is distinguishable from the others in that it involves only a recommendation or request not binding upon the court, it is important that the defendant be aware that this is the nature of the agreement into which he has entered. The procedure contemplated by the last sentence of amended subdivision (e)(2) will establish for the record that there is such awareness.

Fed.R.Crim.P. 11 Conference Committee Notes. When read in context, it is clear that Rule 11's silence does not confer upon defendant an absolute right to withdraw his plea at any time until the court accepts or rejects the plea agreement. *See also State of Illinois Dept. of Public Aid v. Schweiker*, 707 F.2d 273, 277 (7th Cir.1983) ("not every silence is pregnant; *expressio unius est exclusio alterius* is therefore an uncertain guide to interpreting statutes . . . .").

Defendant relied on the Fifth Circuit's opinion in *United States v. Ocanas*, 628 F.2d 353 (5th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840

---

2. Defendant entered into a combination of a type A and C agreement. Thus, Rule 11(e)(2) is

inapplicable.

(1981) as support for his contention. In *Ocanas,* the court permitted the government to withdraw its consent to the plea agreement prior to the court's acceptance of defendant's plea of guilty. The court reasoned that because neither party was justified in substantially relying on the agreement until the court approves it, either party should be entitled to modify its position or withdraw its consent to the agreement until both the plea is tendered to and the bargain is accepted by the court. *Id.* at 358.

The approach taken in *Ocanas* diminishes the solemnity of the taking of the plea. Rule 11's provisions specifically seek to ensure that entry of a plea is not a meaningless act. Great care is taken when accepting pleas under Rule 11. Plea agreements are placed on the record, the voluntariness and accuracy of the plea is ascertained, and detailed advice is provided to the defendant concerning his rights and the consequences of his plea as well as a determination that defendant understands these matters. Thus, in light of Rule 11,

> "there is no reason to view pleas so taken as merely 'tentative,' subject to withdrawal before sentence whenever the government cannot establish prejudice.
>
> > Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but 'a grave and solemn act,' which is 'accepted only with care and discernment.'
>
> *United States v. Barker,* [514 F.2d 208] *supra,* quoting from *Brady v. United States,* 397 U.S. 742 [90 S.Ct. 1463, 25 L.Ed.2d 747] (1970)."

Fed.R.Crim.P. 32 Notes of Committee on the Judiciary. Undoubtedly to preserve the integrity of the plea-taking process, Congress limited withdrawal of a plea to those situations where defendant demon-

strates a fair and just reason. If Congress had wanted to carve out an exception to the fair and just standard for those individuals who wished to withdraw a plea prior to the acceptance or rejection of the plea agreement by the court, it would have done so. For these reasons, there is no absolute right to withdraw a plea prior to acceptance of the plea agreement by the court.

Defendant also claims that he was deprived of the effective assistance of counsel at his Rule 32(d) hearing because his attorney was burdened by a conflict of interest. Defendant alleged in his *pro se* Rule 32(d) motion that his appointed counsel had advised him to plead guilty because he did not want to make waves with the federal prosecutors with whom he would be working in the future. The same counsel represented defendant at the Rule 32(d) hearing and defendant did not object to his representation. When asked to respond to the government's argument opposing defendant's Rule 32(d) motion, defendant's counsel acknowledged the conflict in stating "I have some difficulty with the proceedings here today because in fact the content of the letter before you contains some information which, if true, would, quite frankly in my opinion, be tantamount to malpractice in [sic] my part." (Tr. 4, May 20, 1985).

We note preliminarily that appellate courts generally do not consider claims of ineffective assistance of counsel on direct appeal from guilty pleas because there has been no opportunity to develop and include in the record evidence relating to the ineffectiveness issue. *United States v. Fisher,* 772 F.2d 371 (7th Cir.1985). In this case, however, the record has been sufficiently developed to enable us to consider the claim. *See Government of Virgin Islands v. Zepp,* 748 F.2d 125, 133 (3d Cir.1984).

 A criminal defendant is entitled to counsel whose undivided loyalties lie with his client. *United States v. Jeffers,* 520 F.2d 1256, 1263 (7th Cir.1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976). Although the issue of a conflict typically arises in a case involving joint

representation, it also may arise when a client's interest conflicts with that of his attorney. The same principles apply. *Walberg v. Israel,* 766 F.2d 1071, 1075 (7th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985); *Wilson v. Mintzes,* 761 F.2d 275, 286 (6th Cir.1985). The standard for determining whether an attorney's conduct is constitutionally defective was set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A criminal defendant must demonstrate both that counsel's conduct was deficient and that his deficiency prejudiced the result. *Id.* at 2064. The Supreme Court noted, however, that when counsel is burdened by an actual conflict of interest, a limited presumption of prejudice is accorded the defendant. "Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* at 2067 (citing *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980)). This presumption of prejudice is necessary because a true conflict of interest forecloses the use of certain strategies and thus the effect is difficult if not impossible to measure. *See Strickland,* 104 S.Ct. at 2067; *United States v. Cirrincione,* 780

F.2d 620, 629 (7th Cir.1985); *see also Cuyler,* 446 U.S. at 349, 100 S.Ct. at 1718 (conflict itself demonstrated ineffective assistance of counsel and therefore it is unnecessary "to indulge in nice calculations as to the amount of prejudice").

■ Defendant has demonstrated an actual conflict. First, counsel was not able to pursue his client's best interests free from the influence of his concern about possible self-incrimination. As counsel acknowledged, if the allegations in defendant's motion were true, his actions would be tantamount to malpractice. Any contention by counsel that defendant's allegations were not true would (and did) contradict his client. In testifying against his client, counsel acted as both counselor and witness for the prosecution. These roles are inherently inconsistent. *Zepp,* 748 F.2d at 138. The duty of loyalty is perhaps the most basic of counsel's duties. *Strickland,* 104 S.Ct. at 2067. Counsel breached this duty in testifying against defendant at the Rule 32 hearing.[3] Although the trial court found solace in counsel's years of experience in representing criminal defendants, counsel's experience is irrelevant under these circumstances and in no way nullified the conflict.[4] Nor did defendant's

---

**3.** Rule 1.6 of the ABA Rules of Professional Conduct authorizes an attorney to disclose confidential information to respond to allegations concerning the representation of his client. In so doing, however, an attorney may not serve as both prosecution witness and counsel for a criminal defendant unless the client waives his right to counsel. If counsel chooses to testify against his client, then the client should be advised of his rights and provided an opportunity to obtain new counsel.

**4.** When counsel was asked whether he actually advised defendant as defendant had alleged, the following colloquy occurred:

THE COURT: ... Did you tell your client that?
MR. KOPEC: No, I did not.
THE COURT: Did you intimate that in any way?
MR. KOPEC: In thinking about the situation this weekend, I believe I recall at one point Mr. Ellison saying to me in discussing my advice to him that he understood that I should not make waves with the Federal Court and Federal prosecutors, and I believe my response at that time was that that was not a

consideration, that we all have our jobs to do, and that my job was to defend him as best I could, whether I made waves or not.
THE COURT: That's really what you said to him?
MR. KOPEC: Yes.
THE COURT: What else?
MR. KOPEC: Well, nonetheless, Your Honor, I am still appointed as his attorney—
THE COURT: That's right.
MR. KOPEC: And I believe—
THE COURT: This Court appointed you, is that true?
MR. KOPEC: That's correct.
THE COURT: How many criminal Defendants have you represented in your experience as a trial lawyer?
MR. KOPEC: At least twenty, twenty-five.
THE COURT: How many in Federal court?
MR. KOPEC: Probably half that number.
THE COURT: I'm sorry.
Go ahead.
You're well experienced. You're an experienced criminal trial lawyer.
MR. KOPEC: I consider myself that.

retreat from his original position *after* counsel testified against him negate the conflict.[5]

Second, defendant was effectively without counsel at the hearing and was forced to present his motion without the assistance of counsel. Defendant's testimony was unclear and, because he was without counsel, there was no cross-examination of his attorney. Thus, defendant not only was without conflict-free representation at the hearing but also was in effect without the assistance of counsel at all, a situation that clearly calls for the application of *Cuyler's* presumption of prejudice. *Cf. Nix v. Whiteside,* —— U.S. ——, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) (defendant has no right to present perjured testimony; therefore, where trial court found that defendant's proposed testimony would have been false, attorney properly refused to assist in presenting that testimony); *Dukes v. Warden,* 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972) (defendant failed to raise conflict during hearing and in any event was represented by new attorney at the hearing; Court found no adverse effect on attorney's performance).

■■■ It was incumbent upon the trial court to protect defendant's right to have the effective assistance of counsel. "This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Glasser v. United States,* 315 U.S. 60, 71, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942) (*quoting Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). A waiver is an intentional relinquishment or abandonment of a known right or privilege. Whether there has been an intelligent waiver of the right to counsel depends upon the particular facts and circumstances surrounding each case including the background, experience, and conduct of the accused. *Johnson,* 304 U.S. at 464, 58 S.Ct. at 1023; *United States v. Noble,* 754 F.2d 1324, 1333 (7th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985); *United States v. Bradshaw,* 719 F.2d 907, 911 (7th Cir.1983). To waive the right to conflict-free representation, defendant must be provided sufficient information or advice to permit a choice between meaningful options. *Noble,* 754 F.2d at 1333. The trial court should determine whether disqualification is appropriate and inquire into the nature of the conflict and the client's awareness of the conflict. *Zepp,* 748 F.2d at 139.

There is no indication in the record that the trial judge considered the propriety of

---

THE COURT: All right.
From the conduct that I see in the short time that I have seen you, I would judge you as a fine litigator, and—in criminal law, especially in the Federal Court.
MR. KOPEC: Thank you, Your Honor.
THE COURT: You do a very professional job, and you have done that in this case.
(Tr. 5–7, May 20, 1985).

5. The following colloquy occurred:
MR. KOPEC: I think Mr. Ellison would like to make a further statement to the Court.
THE COURT: Mr. Kopec, do you have anything else?
MR. KOPEC: Nothing, Your Honor.
THE COURT: Mr. Ellison?
THE DEFENDANT: Well, yes, sir.
[With] reference to paragraph five thereabout [sic] Mr. Kopec, I didn't mean that to be a direct quotation.

THE COURT: *He didn't say that to you?*
THE DEFENDANT: *No, sir.*
THE COURT: You heard what he just said. *Is that what he told you, words to that effect?*
THE DEFENDANT: *Words to that effect over a period of time, but the way I took them at the particular time was like this. I mean, I have no slurs against Mr. Kopec at all, you know, but brief conversations over a period of time, this is the rules.*
To be truthful with you, when I appeared here for a—the plea agreement in March, at that time I would have pled guilty to treason if I could see my son once more.
I don't know what to tell you, but—
THE COURT: Anything else?
THE DEFENDANT: No.
(Tr. 8–9, May 20, 1985) (emphasis added).

disqualification or advised defendant of the conflict. Nor is there any indication of a waiver of defendant's right to conflict-free counsel. Under circumstances where defendant was deprived of his sixth amendment right to counsel during the hearing on his Rule 32(d) motion, we cannot view any possible retreat by an uncounseled defendant as disavowing any conflict.

There can be no doubt that the conflict of interest adversely affected counsel's performance. Not only did counsel testify against his client but, without counsel, defendant was deprived of his sixth amendment right to meaningfully cross-examine those witnesses testifying against him. Accordingly, defendant is entitled to a new hearing on his Rule 32(d) motion.

REVERSED AND REMANDED.