Samuel B. CERRO,
Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 88–2296.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 13, 1989.
Decided April 18, 1989.

Donald V. Morano, Chicago, Ill., for petitioner-appellant.

John W. Vaudreuil, Asst. U.S. Atty., Madison, Wis., for respondent-appellee.

Before WOOD, Jr., POSNER, and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Samuel B. Cerro appeals the district court's denial of his post-conviction motion to vacate his federal convictions and sentences. 28 U.S.C. § 2255. He argues that he was denied effective assistance of counsel guaranteed by the Sixth Amendment because James Ewers, who represented him at trial and on direct appeal, labored under conflicts of interest. We affirm.

## I.  FACTUAL BACKGROUND

We summarize the facts this court found when we considered Cerro's direct appeal:

A jury convicted Sam Cerro of five counts of conspiracy to distribute cocaine and three counts of filing false income tax returns [21 U.S.C. § 846 and 26 U.S.C. § 7206(1)]....

... Each of the alleged conspiracies was between Cerro and one other person, to whom Cerro consigned ("fronted") up to one ounce of cocaine each week for resale to users of cocaine. Each dealer would remit all or part of his retail sales revenues to Cerro, either retaining some of the revenues as compensation for his services or retaining some of the cocaine in lieu of money compensation. The five dealers were the principal witnesses against Cerro, testifying under grants of immunity.

*United States v. Cerro*, 775 F.2d 908, 909–10 (7th Cir.1985). The trial judge sentenced Cerro to a total term of 45 years imprisonment. On direct appeal, this court held that the five alleged conspiracies were instead aspects of a single conspiracy and remanded for resentencing on the conspiracy charge. On remand, the trial judge sentenced Cerro to a total term of 15 years imprisonment.

In his direct appeal, Cerro also argued that the trial judge improperly curtailed Cerro's efforts to impeach the dealers: Lynn Amato, Dino Corti, John Gaulke, Oliver Schnidt, and Charles Phillips. Pursuant to a pre-trial order, the district judge excluded evidence that Gaulke's insurance-brokerage license had been revoked for fraud and that Corti was an extortionist. This court noted that Gaulke testified he had stolen funds from his employer to pay for cocaine and that Corti admitted having committed perjury. This court then found the exclusion of the evidence error but harmless beyond a reasonable doubt. Judge Posner, writing for this court, concluded "it is not as if the jury could have thought that Gaulke and Corti were anything but what they were: crooks singing for their freedom." 775 F.2d at 915.

Cerro now appeals the district court's denial of his post-conviction motion to vacate his convictions and sentences. 28 U.S.C. § 2255. Cerro claims that he was denied his Sixth Amendment right to reasonably effective assistance of counsel because Ewers, who represented him at trial and on direct appeal, "labored under an actual conflict of interest" which affected his representation of Cerro. Alternatively,

Cerro argues that Ewers, the prosecutor, and the judge each had a responsibility to inform him of Ewers' potential conflicts, that each failed to advise him, and that he consequently was unable to waive these conflicts as required by the Sixth Amendment.

Although Cerro raises numerous allegations of actual and potential conflicts, Cerro concentrates on one incident when Ewers put a paper bag over his own head during Cerro's trial and asked a witness if the witness could identify him (the "bag incident"). At the time, Ewers was cross-examining Dino Corti, one of the government's principal witnesses. Corti had testified before a grand jury that Ewers had entered a massage parlor, managed by Corti, with a paper bag over his head and purchased cocaine. When the "bag incident" occurred, the trial judge immediately stopped Ewers and called a side bar. The judge asked Ewers to explain his action. Ewers stated that he was attempting to show how ludicrous Corti's entire testimony was. Ewers assured the judge that it was not necessary to pursue this line of questioning and that he would not himself be called as a witness. Cerro's other allegations of conflict will be addressed throughout our analysis.

## II. ANALYSIS

### A. "The Unknown Attorney"

█ Cerro never complained of ineffective assistance of counsel during trial or on direct appeal. He now argues that he received ineffective assistance of counsel based on numerous potential and actual conflicts. However, he never brought any of these conflicts to the trial judge's attention and only one potential conflict is readily apparent from the record—the "bag incident." Cerro now urges us to use hindsight to find conflicts that were not apparent to the trial judge, prosecuting attorney, defense counsel, or Cerro during trial.[1] As will be seen, his arguments based on potential conflict fail because he did not raise them before the trial judge. Having not raised these issues in the trial court, he must now show actual conflict.

Cerro relies mistakenly on *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). The Supreme Court remanded that case so the trial judge could address a potential conflict, apparent from the record, and determine whether there was an actual conflict. 450 U.S. at 273, 101 S.Ct. at 1104. In *Wood,* the Supreme Court merely followed the rule that a trial judge must examine a potential conflict when a defendant raises the issue during trial or the trial judge has other reason to know that a conflict exists. *See Cuyler v. Sullivan,* 446 U.S. 335, 347, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980); *see also United States v. Horton,* 845 F.2d 1414, 1418 (7th Cir.1988). The trial judge hearing Cerro's case addressed the potential conflict based on the "bag incident" when he first became aware of it. The trial judge halted immediately the inappropriate actions of Cerro's counsel. The judge then called a side bar and determined that attorney

---

**1.** We need not determine whether Cerro is procedurally barred from raising his ineffective assistance claim in his post-conviction section 2255 motion because the government failed to raise this issue on appeal and thereby waived it. *See* 28 U.S.C. § 2255; *Blake v. United States,* 841 F.2d 203, 205 (7th Cir.1988); *see generally Norris v. United States,* 687 F.2d 899 (7th Cir.1982). The United States Attorney has accepted, and we think properly, the district court's ruling that Cerro's action is not procedurally barred because Cerro needed to supplement the record after his direct appeal was decided in order to press his present claim. *See Johnson v. United States,* 838 F.2d 201 (7th Cir.1988). The Supreme Court recently affirmed the procedural bar doctrine with regard to state prisoners, but qualified the doctrine's reach by holding that a federal court, in a habeas proceeding, must reach federal claims "unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed,* —— U.S. ——, ——, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (citations omitted) (adopting "plain statement" rule, *see Michigan v. Long,* 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983), to augment the adequate and independent state ground doctrine already applicable to habeas proceedings, *see Wainwright v. Sykes,* 433 U.S. 72, 81, 87, 97 S.Ct. 2497, 2503, 2506, 53 L.Ed.2d 594 (1977)). *Harris* will limit future applications of the procedural bar doctrine with regard to some state prisoners, but it does not affect our present analysis of Cerro's claim as he is a federal prisoner.

Ewers would not be called as a witness and would not need to pursue this matter further. *Cf. Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (court reverses trial judge who refused to appoint separate counsel without adequately addressing the risk of conflict posed by joint representation). Because the trial judge addressed the possibility of conflict to the extent the matter was raised during trial, we "cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel." *Cuyler v. Sullivan,* 446 U.S. at 348, 100 S.Ct. at 1718; *United States v. Horton,* 845 F.2d at 1418. However, if the defendant "demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance'" he is entitled to a limited presumption of prejudice and need not establish actual prejudice. *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984) (quoting *Cuyler v. Sullivan,* 446 U.S. at 350, 348, 100 S.Ct. at 1719, 1718); *United States v. Horton,* 845 F.2d at 1418.

### 1. Actual Conflict of Interest

In support of his contention that Ewers "actively represented conflicting interests," *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719, Cerro argues that (1) Ewers' personal interest in avoiding prosecution, based on Corti's grand jury testimony which implicated Ewers in the possession, use, and sale of cocaine, conflicted directly with Cerro's interest in vigorous cross-examination and impeachment of Corti; (2) Ewers' personal interest in avoiding prosecution, based on Phillips' grand jury testimony which implicated Ewers in cocaine use, conflicted directly with Cerro's interest in vigorous cross-examination and impeachment of Phillips; (3) Phillips' interest in confidentiality, based on Ewers' prior representation of Phillips on a drunk driving charge, conflicted directly with Cerro's interest in vigorous cross-examination and impeachment of Phillips; and (4) Ewers' interest in protecting the partners of his law office, based on the grand jury testimony of Corti and Gaulke that implicated the

partners in criminal activity, conflicted with Cerro's interest in vigorous cross-examination and impeachment of Corti and Gaulke. Cerro submits voluminous evidence to support the testimony referred to above and includes other evidence that purports to impeach each of the five dealers. This latter evidence was not introduced at trial, is not addressed by Cerro in his brief, and is submitted in an apparent attempt to bolster his argument that the alleged conflicts adversely affected Ewers' efforts.

After a thorough examination of the record, we fail to find an actual conflict of interest. Corti's testimony before the grand jury only indirectly implicated Ewers in criminal activity and was inconsistent. In most instances, Corti alleged that cocaine intended for Ewers was given to someone else, not directly to Ewers. Most of Corti's testimony was qualified and implicated Ewers through hearsay. Phillip's testimony that he snorted coke with Ewers was not even given to a grand jury until after Cerro's conviction. Even if we accept as fact Cerro's allegations that Corti and Phillips implicated Ewers before the grand jury, that Corti and Gaulke implicated Ewers' partners, and that Ewers had previously represented Phillips on another charge, we find no evidence to support Cerro's contention that Ewers or his partners were the objects of a criminal investigation either prior to or during Cerro's trial. Other than the "bag incident," we find no evidence that these matters arose during trial or pre-trial. When the "bag incident" occurred, Ewers averted an actual conflict by terminating an inappropriate line of questioning and informing the court that he would not be a witness. The potential conflict based on Ewers' prior representation of a government witness never blossomed into an actual conflict. Cerro does not show that Phillips was a current client or that there was a definite need to discover information subject to confidentiality as a result of the prior representation. In sum, Cerro's numerous allegations fail to demonstrate an actual conflict.

Cerro's situation is similar to the circumstances this court analyzed in *United*

*States v. Horton,* 845 F.2d 1414 (7th Cir. 1988). In *Horton,* appointed defense counsel was a finalist for the position of United States Attorney and the defendant alleged that this situation created a conflict of interest as a matter of law. 845 F.2d at 1418. This court found no conflict because there was no evidence "that the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests." 845 F.2d at 1419. Even when the "bag incident" occurred, Ewers was attempting to help, not harm Cerro. According to Ewers, he was attempting to show how ludicrous Corti's testimony was.

Had Ewers been called to testify, he would have been testifying on behalf of Cerro, not against him as was the attorney in *United States v. Ellison,* 798 F.2d 1102 (7th Cir.1986), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). In *Ellison,* the defendant attempted to withdraw his guilty plea based on alleged faulty advise of counsel. At a hearing on withdrawal of the plea, defense counsel testified and directly contradicted his client. The trial judge relied heavily on counsel's testimony and refused to allow the defendant to withdraw his plea. This court found an actual conflict of interest based on counsel's testimony for the prosecution and noted that the allegations against counsel, if unchallenged, were tantamount to malpractice. 798 F.2d at 1107.

The Third Circuit found a similar conflict in *Government of Virgin Islands v. Zepp,* 748 F.2d 125 (3d Cir.1984). In *Zepp,* defense counsel stipulated to testimony, in lieu of testifying for the prosecution, that directly implicated his client. 748 F.2d at 129. *Zepp* involved a "fingerpointing" defense. Had the attorney not testified against his client, the attorney may have been charged with the offense. 748 F.2d at 132. Because the conflict was unusually obvious in *Zepp,* the Third Circuit subsequently took pains to point out "that overemphasis on the presumption of prejudice cannot operate to obviate the requisite obligation to demonstrate the existence of an actual conflict." *United States v. Gambino,* 788 F.2d 938, 951 (3d Cir.), *cert. denied,* 479 U.S. 825, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986). Unlike *Zepp* and *Ellison,* Ewers did not testify and, if he had, his testimony would have supported his client.

Finally, Cerro argues that we should adopt a *per se* rule of conflict based on counsel's involvement in criminal activities similar to those for which the defendant is charged. *See United States v. Cancilla,* 725 F.2d 867 (2d Cir.1984). Cerro, however, fails to provide sufficient facts to trigger application of this rule. In *Cancilla,* the attorney's involvement in similar criminal activities was not discovered until after trial. Moreover, the government took the position "that the court should assume trial counsel had labored under a 'most egregious' conflict of interest while defending Peter Cancilla," 725 F.2d at 868, and the government conceded "that Cancilla knew nothing of his counsel's prior activities," 725 F.2d at 869. Confronted with these facts, the Second Circuit adopted a *per se* rule mandating reversal based on its concern that counsel's performance would be inhibited by his preoccupation with averting discovery of counsel's own criminal activities. 725 F.2d at 870.

We have no concessions from the government that Ewers was engaged in criminal activity. Rather, the government grants Ewers the proper presumption of innocence and argues persuasively that Corti's testimony fails to clearly establish that Ewers was involved in criminal activity. In addition, if Ewers was involved in criminal activity, Cerro probably knew about it. If we accept the underlying premise of Cerro's argument, we must find that Ewers was actively involved in the same criminal conspiracy that Cerro headed according to the overwhelming testimony of Cerro's coconspirators. If this was the case, Cerro was clearly aware of the potential conflict well in advance of trial. Cerro's argument at this point is disinguous and incongruous. He wants us to overturn his conviction because his attorney had previously been deeply involved in helping him run his criminal conspiracy. We do not accept his argument.

In any event, the evil that the Second Circuit sought to avoid—a defense attorney ineffectively representing his client because the authorities might become aware of the attorney's own criminal misconduct —is not present in this case. Whatever involvement Ewers might have had with the use, possession, and sale of cocaine was already presented to the authorities in grand jury testimony taken prior to Cerro's trial. There was no danger that the authorities would learn something novel about Ewers' possible involvement in criminal activities—that information was already out of the bag. In short, Cerro fails to establish an actual conflict of interest.

### 2. Adverse Effect of Conflict

██ Even if Cerro had established that Ewers labored under an actual conflict of interest, he failed to prove that it "adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. at 348, 100 S.Ct. at 1718. Cerro argues that an adverse effect is established by the "bag incident" and Ewers' failure to secure a plea agreement. Cerro advanced other arguments below but has abandoned them on appeal. We do not address the arguments he has abandoned. Cerro contends that the "bag incident" was performed for Ewers' personal interest to the detriment of his client. Cerro also argues that Bruce Rosen, who represented Cerro before Ewers took over his case, told him that the United States Attorney had agreed to a plea bargain and that nothing more was done about this after Ewers became his attorney.

We review our earlier comments regarding the "bag incident." We agree that it was inappropriate but we emphasize that the trial judge properly ended this bizarre behavior. We also note that Ewers' immediate explanation was that he was attempting to show how ludicrous Corti's testimony was. Ewers risked personal embarrassment to help his client. While inappropriate, we do not think this incident adversely affected Cerro. As to the possibility of a plea agreement, if one had existed, Cerro could have agreed to it while Rosen was his attorney. Instead, he chose to fire Rosen and hire Ewers. We find no adverse effect

from Cerro retaining counsel of choice. Neither incident advanced by Cerro establishes that he was adversely affected by an actual conflict of interest. Since we previously found that no actual conflict existed, we conclude that Cerro has not demonstrated "that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984) (quoting *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719). Consequently, Cerro is not entitled to a limited presumption of prejudice and he has failed to demonstrate actual prejudice. *Id.* His claim of ineffective assistance of counsel fails.

### B. Waiver of Potential Conflict

Cerro also claims that he was denied effective assistance of counsel because the judge, the prosecutor, and his defense attorney all failed to advise him of potential conflicts of interest and he did not waive conflict-free representation. Since we determined that potential conflicts existed when we rejected Cerro's argument that Ewers did not labor under an actual conflict of interest, we do not replow that ground. Instead, we confine our analysis to the duty of the judge, prosecutor, and defense counsel, and the alleged waiver requirement. We start with the judge.

██ The trial judge has a duty to explore a potential conflict when it is brought to his attention or when it is readily apparent from the record. *See Wood v. Georgia,* 450 U.S. 261, 272, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981); *United States v. Ellison,* 798 F.2d 1102, 1108 (7th Cir.1986), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). In addition, the judge should normally discuss the matter with the defendant. *See United States v. Jeffers,* 520 F.2d 1256, 1263 n. 11 (7th Cir. 1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976). The exact manner of the judge's inquiry is not prescribed, however, and Cerro's attempt to bootstrap a Rule 44(c) hearing onto this inquiry is inappropriate. Fed.R.Crim.P. 44(c). Rule

44(c) is confined to conflicts arising from joint representation and is not at issue in this case. *See United States v. Bradshaw,* 719 F.2d 907, 914 (7th Cir.1983).

We start our analysis of the judge's inquiry by determining when a potential conflict was brought to his attention or when a conflict should have been readily apparent to him from the record. No one called the judge's attention to a potential conflict. The judge raised the issue himself the only time it was apparent from the record, when the "bag incident" occurred. The judge then explored the matter and determined that no actual conflict would arise. Neither the prosecutor nor the defense counsel objected to this determination. As a result, the judge did not discuss the matter with the defendant. While it is better practice for the trial judge to discuss a potential conflict with the defendant personally, *see Jeffers,* 520 F.2d at 1263, failure to do so does not automatically deny the defendant effective assistance of counsel under the Sixth Amendment. The judge did not need to discuss the matter with the defendant because he ruled out the possibility of conflict. *Cf. Bradshaw,* 719 F.2d at 915 (no requirement for Rule 44 inquiry if no actual conflict). Other circumstances might require a more searching inquiry but they are not present here. *See Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981) (conflict readily apparent from the record—employer paid his attorney to represent defendants); *United States v. Ellison,* 798 F.2d 1102 (7th Cir.1986), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987) (conflict readily apparent—defense attorney testified against client at hearing and defendant was effectively without counsel); *United States v. Bradshaw,* 719 F.2d 907 (7th Cir.1983) (joint representation); *United States v. Jeffers,* 520 F.2d 1256 (7th Cir.1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976) (conflict directly raised by defense counsel). We hold that the trial judge inquired properly about a potential conflict of interest.

We now address the prosecutor's responsibility. Contrary to Cerro's assertions, the prosecutor was under no duty to advise the court of a potential conflict of interest. At best, the prosecutor knew that Corti implicated Ewers in his grand jury testimony. Those allegations were unsubstantiated and uncorroborated. The prosecutor was in a position to know what the government intended to do with this incriminating information. As the government had not indicted Ewers or made him the object of an investigation, it is likely that the prosecutor did not foresee a potential conflict based on this information.

Further, whether a prosecutorial duty to inform exists in these circumstances remains an open question. The cases cited by Cerro offer only dubious support for his claim. In *United States v. Clarkson,* 567 F.2d 270 (4th Cir.1977), the Fourth Circuit upheld the trial court's disqualification of defense counsel based on the prosecutor's motion. The prosecutor had moved to disqualify the attorney, who was under investigation for fraudulently preparing tax returns, from representing before the Internal Revenue Service the taxpayers whose returns were allegedly falsified. The Fourth Circuit determined that it was permissible for the government to make a disqualification motion in such circumstances. The court did not create a rule requiring prosecutors to move for disqualification of defense counsel. 567 F.2d at 272.

In *United States v. Iorizzo,* 786 F.2d 52 (2d Cir.1986), the Second Circuit stated that prosecutors, if aware of a defense attorney's potential conflict before trial, should dispose of the issue then rather than attempt to use the conflict to limit cross-examination during trial. Such an approach would have prevented an actual conflict in Iorizzo's case. 786 F.2d at 59. However, the judges did not support this rule with any case law or other constitutional authority. *Id.* Instead, the judges appended the statement to the end of their analysis based on their apparent exasperation with the prosecutor's handling of the case. We do not disagree with the propriety of such a recommendation under like circumstances, but we conclude that it is not a constitutional requirement. In the present case, the prosecutor was under no constitutional duty to advise the trial court of a potential conflict based on the information available to him.

Lastly, we consider the failure of Ewers to advise Cerro of possible conflicts of interest. Ewers clearly had an ethical duty to disclose possible conflicts. *See United States v. Jeffers,* 520 F.2d 1256, 1263 (7th Cir.1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976). Just as clearly, Ewers' failure to do so does not automatically establish that Cerro was denied effective assistance of counsel under the Sixth Amendment. *See United States v. Horton,* 845 F.2d 1414, 1419 (7th Cir.1988). The purpose of the ethical duty to disclose potential conflicts is to ensure conflict-free representation. *Cf. United States v. Bradshaw,* 719 F.2d 907, 915 (7th Cir.1983) (no requirement for conflict inquiry if no conflict in a Rule 44 situation). We have already determined that there was no conflict.

We reject Cerro's final argument on the same grounds. Cerro was not denied effective assistance of counsel under the Sixth Amendment when he failed to waive potential conflicts because there was no conflict to waive.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.