In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2187

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN VOLPENTESTA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 07-cr-50049 — **Frederick J. Kapala**, *Judge.*

ARGUED DECEMBER 3, 2012 — DECIDED AUGUST 14, 2013

Before WOOD and HAMILTON, *Circuit Judges*, and DARROW,
*District Judge.*[*]

DARROW, *District Judge.* The defendant John Volpentesta
was convicted of a number of real estate and tax fraud offenses
stemming from his scheme to defraud customers, subcontrac-
tors, and investors in his construction business. He appeals on

---

[*] Of the Central District of Illinois, sitting by designation.

three grounds: that he was deprived of his Sixth Amendment right to effective assistance of counsel; that his waiver of his right to counsel was not knowingly, voluntarily, and intelligently given; and that the district court erroneously denied his motions to continue the trial once he had decided to represent himself. We find no error on the part of the district court, and therefore affirm.

## I. Background

John Volpentesta owned and operated Volpentesta Construction Inc. ("VCI") from 2003 to 2006 in Marengo, Illinois. It was through VCI that Volpentesta defrauded customers, investors, subcontractors, and ultimately the government. On October 23, 2007, a federal grand jury in Rockford, Illinois, returned an indictment charging Volpentesta with six counts of mail and wire fraud and seventeen counts of federal tax violations. Volpentesta was arraigned on the charges on December 7, 2007, at which time the court appointed Assistant Federal Defender Paul Gaziano to represent him.

Due to the volume of discovery (approximately 11,000 pages of Bates-stamped discovery and 40 banker's boxes of documents seized by the IRS from VCI's offices), Gaziano made efforts to ensure that Volpentesta could review the discovery electronically at the Ogle County Jail. When Volpentesta complained that the computer at the jail was too slow, Gaziano relayed his concerns to the district court. As an accommodation, Magistrate Judge Mahoney ordered the U.S. Marshal's Service to periodically transport Volpentesta to the courthouse in Rockford to review the documents.

On November 17, 2008, Volpentesta filed the first of what would eventually be nine motions to substitute counsel. At the subsequent hearing, Volpentesta claimed that he had difficulty reviewing discovery in electronic form and that Gaziano had not provided him with printed copies of discovery. Gaziano informed the court that he had given Volpentesta summaries of the discovery and that Volpentesta had only once taken the court up on its offer to review discovery at the courthouse. The court explained to Volpentesta that Gaziano had already reviewed the 11,000 pages of discovery, and appointing new counsel would result in a significant delay in the case. Volpentesta stated that he nonetheless desired new counsel, and the court granted his motion. Mark Byrd was thereafter appointed to represent the defendant.

Volpentesta again moved for new counsel on April 22, 2009, claiming that he still had not received hard copies of the Bates-stamped discovery and had only seen Byrd once since his appointment. At the hearing, Byrd responded that he had met with Volpentesta four or five times, he was working on getting Volpentesta printed copies of the discovery, and that it would be "tremendously helpful" if Volpentesta would come to the courthouse to review the materials with him. Volpentesta and Byrd agreed that the relationship could be mended, and the court denied the motion.

On July 14, 2009, Volpentesta moved for new counsel, again complaining that he had not yet received his requested discovery. In response, Byrd filed a motion to withdraw, explaining that he and his staff had already spent a large amount of time and resources trying to accommodate Volpentesta's demands (such as by securing CJA funds for an

outside copy service and redacting and separately printing grand jury transcripts and exhibits), and that Volpentesta refused to review the boxes of seized materials with him. At a subsequent hearing, Volpentesta and Byrd expressed differing views on Byrd's representation as well as his reasons for the delay in getting printed copies of discovery to Volpentesta, but Byrd stated that he and the defendant were still on speaking terms. Approximately two weeks later the court denied Volpentesta's motion to substitute and Byrd's motion to withdraw, and instead appointed Robert Fagan as co-counsel. The judge also noted the ample accommodations made to Volpentesta by his attorneys and the court.

On October 7, 2009, Volpentesta filed motions to substitute Fagan and for reconsideration of his motion to replace Byrd, citing difficulties in reaching his attorneys and concerns over their diligence. After hearing from Byrd and Fagan, and their assurances that the relationship could be mended, the court denied Volpentesta's motions.

On December 14, 2009, now appearing before Judge Kapala, Volpentesta made his fifth motion for new counsel, citing communication issues and a lack of trust between himself and his attorneys. In response, Byrd and Fagan stated that they had met with Volpentesta on numerous occasions and were doing their best to accommodate his strong feelings about how the case should be prepared and presented at trial. The court did not find that the dispute between Volpentesta and his attorneys resulted in a total lack of communication preventing an adequate defense, and noted the high quality of Volpentesta's representation. The court therefore denied his motion.

In late February and early March of 2010, additional discovery was tendered to the defendant. After Volpentesta filed a *pro se* motion to continue, which the court denied, Byrd moved to continue the trial. The court granted the motion and set trial for June 1, 2010. The court also foresaw that Volpentesta might move to represent himself and strongly advised him against doing so. Volpentesta responded that he was content with his attorneys, but then on March 17, 2010, filed another motion for substitution of counsel along with several *pro se* pretrial motions. Volpentesta argued that Byrd and Fagan should be removed for ineffectiveness for failing to file motions to dismiss various counts of the indictment. In response, Byrd stated that such motions would have been entirely meritless. Byrd, who had previously agreed to work on unrelated cases of Volpentesta's at his request, also said that Volpentesta had recently ordered him not to work on any other client's case before the June 1 trial. Byrd and Fagan explained to the court that their efforts to represent Volpentesta were severely hampered by his exorbitant demands and refusal to assist them in his own defense. As Byrd stated:

> The problem, in my increasing frustration with this is that in two months, we're going to be expected to try to sell to a jury Mr. Volpentesta's veracity and that he's an individual that should be believed, that his testimony should be believed, yet we have to keep coming in here time and again and addressing what are blatant and [sic] misrepresentations by him. It's becoming increasingly difficult to, in good faith, be able to make those types of representations to the jury. At this point, I believe that they can still

> be made, but this is taxing on everyone's patience, Your Honor.

The court denied the motion, noting that the case was already more than two years old and that appointing new counsel would result in significant delays. The court found that Byrd and Fagan were providing competent representation and that Volpentesta's complaints did not amount to a total lack of communication.

Volpentesta filed another motion to substitute on March 31, 2010, voicing similar complaints as before against Byrd and Fagan. When questioned by the court, Byrd stated that their problems boiled down to disagreements over trial strategy, and both attorneys said they were still willing to communicate and cooperate with the defendant. The court denied Volpentesta's motion, noting: "[T]he focus of a justifiable dissatisfaction inquiry is the adequacy of the representation of the attorneys in an adversarial process. It doesn't have to do with your relationship with your attorneys, whether you get along with them, whether you like them, whether you have a cordial [relationship][.]"

At that point Volpentesta told the court that he would file a motion to represent himself. The court then conducted an inquiry to assess whether Volpentesta's waiver of his right to counsel was being made knowingly, intelligently, and voluntarily. In response to the court's questions, Volpentesta stated that he was 52 years old, had a high school degree and had taken some community college classes in business management, and had owned several businesses. He said that he was not taking any medication and had never been treated for

mental illness. He also stated that he had been a party to three bench trials and a bankruptcy, and had previously been convicted of bank fraud in a federal criminal case. When the court inquired into his understanding of the charges against him, however, Volpentesta said that he did not understand how he could be "charged with multiple crimes in one count." The court therefore denied his motion to represent himself.

On April 20, 2010, Volpentesta again moved to proceed *pro se*. At the colloquy with the court that followed, Volpentesta affirmed the answers regarding his background that he had given at the previous hearing. The court then addressed in detail Volpentesta's prior claim that he did not understand the indictment, and after a thorough inquiry Volpentesta assured the court that he did understand the charges against him but was merely challenging their legal sufficiency. The court also asked whether his decision was entirely voluntary, to which Volpentesta answered in the affirmative. However, shortly thereafter Volpentesta said: "[M]y hand is being forced to do this, your Honor. I still want to assert that … . [T]he only way I feel I can get relief is if I represent myself and do this myself." The court responded that he could not allow Volpentesta to represent himself if the decision was not voluntarily made. The defendant then elected to withdraw his motion.

At that time the court also addressed Volpentesta's motion for reconsideration of the court's previous denial of his motion to substitute counsel. In support of his motion, Volpentesta alleged that his attorneys had missed court deadlines, had not subpoenaed records and witnesses, and had not yet completed their review of the boxes of materials seized by the IRS. In response, Byrd stated that he would be filing motions shortly

and that he had spent 50 hours reviewing the search materials. He also said that records from Volpentesta's bank and title company had been provided in discovery and Volpentesta had not explained what useful documents could be gained by subpoena. Byrd further stated that Volpentesta refused to say what relevant testimony he hoped to elicit from the 92 witnesses he wanted his attorneys to subpoena, and that he was concerned that their potential testimony could actually hurt Volpentesta's case (a prophesy which was realized when Volpentesta eventually proceeded to trial *pro se*). The court denied Volpentesta's motion, again noting that his attorneys were providing competent and zealous representation and that Volpentesta's disagreements over trial strategy did not merit another substitution of counsel.

On May 10, 2010, Volpentesta again moved to represent himself. At the hearing on May 21, 2010, Volpentesta reaffirmed his answers to the questions the court had previously asked him regarding his self-representation. The court inquired into Volpentesta's understanding of the charges against him, and asked him whether his decision to proceed *pro se* was being made voluntarily, to which he responded in the affirmative. Volpentesta also confirmed that he would be prepared to go to trial in one-and-a-half weeks as scheduled. After further questioning and warnings from the court about the risks of representing himself, the court accepted Volpentesta's waiver of his right to counsel and granted his motion.

Three days later, on May 24, 2010, Volpentesta moved for a 90-day continuance in order to complete his preparation for trial. In a detailed written order the court granted him a three-week continuance that it believed would sufficiently

satisfy Volpentesta's needs, and set trial for June 21. Volpentesta filed additional motions for continuances on June 8 and June 17, 2010, which the court denied. On June 18, 2010—the Friday before the Monday trial date—Volpentesta again moved to continue the trial, arguing that he had not been provided with image files of VCI's computers, which he claimed may have contained exculpatory evidence. The court, in another written order, analyzed Volpentesta's claims and rejected them.

Volpentesta's trial began on June 21, 2010, and on July 19, 2010, the jury convicted him of twenty-one of the twenty-three counts. On May 9, 2011, the trial court sentenced him to a total of 133 months in prison and ordered him to pay over one million dollars in restitution to the victims of his fraud scheme. Volpentesta now appeals.

## II. Discussion

Volpentesta challenges his conviction on several grounds. First, he contends that the district court erred in denying his motions to appoint a fourth attorney as substitute counsel for Byrd and Fagan. Second, he claims that his waiver of his right to counsel was not knowing, voluntary, and intelligent. Third, he argues that the district judge abused his discretion by denying his motions to continue the trial by ninety days while granting him a three-week continuance. We consider each argument in turn.

A. Volpentesta's Motions for New Counsel

Volpentesta submits that the district court committed reversible error when it denied each of Volpentesta's motions to replace Byrd and Fagan with new counsel. Volpentesta puts forth three theories as to why the court erred: because it abused its discretion in denying his motions to substitute; because it erred as a matter of law by applying the wrong standard; and because it failed to remove Byrd and Fagan because they had conflicts of interest.

We first address whether the district court abused its discretion in denying Volpentesta's motions for new counsel. *See Martel v. Clair*, 132 S. Ct. 1276, 1287 (2012); *see also United States v. Horton*, 845 F.2d 1414, 1417 (7th Cir. 1988) (abuse of discretion standard applies so long as defendant was given the opportunity to explain the reasons for his request). In deciding whether a district court abused its discretion in denying a motion for substitute counsel, we consider a number of factors including the timeliness of the motion, the adequacy of the court's inquiry into the motion, and whether the conflict was so great that it resulted in a total lack of communication preventing an adequate defense. *United States v. Harris*, 394 F.3d 543, 552 (7th Cir. 2005); *United States v. Bjorkman*, 270 F.3d 482, 500 (7th Cir. 2001). If we find an abuse of discretion, we will nevertheless uphold the district court's decision unless the defendant establishes that he was deprived of his Sixth Amendment right to effective assistance of counsel. *See United States v. Zillges*, 978 F.2d 369, 372-73 (7th Cir. 1992).

As to the timeliness of Volpentesta's motions, Volpentesta first moved for new counsel in April of 2009 and continued

making similar motions—nine in all—until he decided to represent himself in May 2010. But it is unnecessary for us to parse out which motions were timely and which were not, because even if the motions were timely it does not necessarily mean the district court erred in denying them. *See Bjorkman*, 270 F.3d at 501 ("[E]ven if we find Bjorkman's request timely, a consideration of the two remaining factors convinces us that the district court did not abuse its discretion in denying it."). Because the remainder of our analysis supports the district court's findings that substitution of counsel was not warranted, the timeliness of Volpentesta's motions is not critical to our decision.

Next, turning to the adequacy of the court's inquiry, we find that the district court's inquiries into Volpentesta's repeated motions to substitute counsel were more than adequate. Each time, the court questioned Volpentesta and his attorneys at length about their relationship, the validity of Volpentesta's complaints, and the efforts Byrd and Fagan were making to accommodate Volpentesta's concerns. For each of Volpentesta's repeated motions, the court gave ample consideration to his doubts regarding Byrd and Fagan's diligence in representing him, and did not merely seek to "elicit a general expression of satisfaction" by Volpentesta, see *Zillges*, 978 F.2d at 372, or to dismiss the matter in a conclusory fashion, *Bjorkman*, 270 F.3d at 501. Accordingly, we find that the district court's inquiries into Volpentesta's motions were more than sufficient.

Finally, we consider whether a total breakdown in communication between Volpentesta and his attorneys prevented an adequate defense. While it is apparent from the record that

Volpentesta and his attorneys frequently butted heads, there is scant evidence that the gulf of communication so widened as to constitute a total breakdown. The fact is that Volpentesta, Byrd, and Fagan were communicating, but simply disagreeing. They disagreed about whether Byrd and Fagan should interview witnesses, how much Volpentesta should aid Byrd and Fagan in preparing his defense, and when Volpentesta should receive paper copies of discovery. They disagreed about Volpentesta's perceived delays and his complaints that Byrd and Fagan failed to file the motions he wanted them to. But as the district court noted in denying Volpentesta's motions for substitution, the disagreements between Volpentesta and his attorneys were in essence arguments over trial strategy (which likely developed into personality conflicts over time as well), which do not constitute grounds for substitution of counsel. *United States v. Horton*, 845 F.2d 1414, 1418 (7th Cir. 1988); *United States v. Hillsberg*, 812 F.2d 328, 333-34 (7th Cir. 1987). The court's questioning of Volpentesta, Byrd, and Fagan shows that they were meeting regularly to discuss the case, and when pressed by the court the parties stated that they had been communicating and felt the relationship could be mended. While Volpentesta places much emphasis on the language used by his attorneys to describe their client's demanding behavior (e.g. "Kafkaesque"), such exaggerated word choice is merely symptomatic of a conflict between a demanding client and attorneys who felt they were doing their best—not between parties whose communication had so totally broken down as to preclude an adequate defense.

Volpentesta makes another argument in support of his contention that the district court abused its discretion in denying his motions to substitute. He asserts that the court made a mistake of law by finding the relevant inquiry to be limited only to the adequacy of Volpentesta's representation but not the degree of communication between the parties. In denying Volpentesta's motions, the court stated: "[T]he focus of a justifiable dissatisfaction inquiry is the adequacy of the representation of your attorneys in an adversarial process. It doesn't have to do with your relationship with your attorneys, whether you get along with them, whether you like them, whether you have a cordial [relationship][.]" The question, as the court put it at one point, is "whether the attorneys are providing competent representation, whether they're doing what they need to do to present an adequate defense, and I believe they are." In contrast with Volpentesta's overly selective interpretation of the district court, the court was simply expressing what we have stated above: clashes of personality are insufficient to merit a substitution of counsel. Further, Volpentesta's assertion that the district court erred by focusing the inquiry on the effectiveness of Byrd and Fagan's representation is misguided given that effective assistance of counsel is precisely what the Sixth Amendment guarantees. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970) ("It has long been recognized that the right to counsel is the right to the effective assistance of counsel."). The amount and quality of communication between Volpentesta and his attorneys (which, we note, the district court did adequately address) is itself but one facet of the general inquiry into whether counsel was effective. Volpentesta's attempts to pick apart the district

court's entirely correct application of the law are without merit.

*****

Volpentesta makes one final argument regarding the court's denial of his motions to substitute. He contends that the court should have appointed him new attorneys because Byrd and Fagan had conflicts of interest. We review a judge's decision not to remove counsel on the basis of a conflict of interest *de novo*. *Cabello v. United States*, 188 F.3d 871, 875 (7th Cir. 1999); *Spreitzer v. Peters*, 114 F.3d 1435, 1450 (7th Cir. 1997). A criminal defendant is entitled to counsel whose undivided loyalties lie with his client, *United States v. Jeffers*, 520 F.2d 1256, 1263 (7th Cir. 1975), and an attorney who has an actual conflict of interest breaches his duty of loyalty, *Strickland v. Washington*, 466 U.S. 668, 692 (1984) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980)). In arguing that Byrd and Fagan had actual conflicts of interest, Volpentesta cites statements they made when called upon to answer Volpentesta's claims of ineffectiveness:

> "[I]n two months, we're going to be expected to try to sell to a jury Mr. Volpentesta's veracity and that he's an individual that should be believed, that his testimony should be believed, yet we have to keep coming in here time and again and addressing what are blatant and [sic] misrepresentations by him. It's becoming increasingly difficult to, in good faith, be able to make those types of representations to the jury. At this point, I believe that they can still be

made, but this is taxing on everyone's patience, Your Honor."

"Judge, the only thing I would add is that if we've been ineffective at all it's in not motioning the Court to have [Volpentesta] analyzed by a psychologist … ."

"Judge, if I may, I would like everyone to back [up] and just observe what's taking place here. We are now litigating the case for the government. I mean, we're responding to a motion that we never filed and are presenting to the Court our justifications for not filing it. The government might as well step out. I mean, we've argued their case for them. I mean, this is somewhat Kafkaesque, Judge."

Byrd and Fagan had conflicts of interest, Volpentesta asserts, because they were forced to accuse their client of deliberate falsehoods in order to defend themselves against allegations of ineffectiveness. Volpentesta therefore claims that Byrd and Fagan breached their duty of loyalty to him by acting as "both counselor and witness for the prosecution." *United States v. Ellison*, 798 F.2d 1102, 1107 (7th Cir. 1986). But Volpentesta's reliance on *Ellison* is misplaced. In that case the defendant alleged that his attorney advised him to plead guilty in order to curry the attorney's favor with the "federal people." *Id.* at 1104. Because his client's statements to the court exposed him to malpractice, the attorney could only defend himself by contradicting his client. We held that, in being called to testify at his client's Rule 32 motion hearing, the attorney had an actual conflict of interest because he was "not able to pursue

his client's best interests free from the influence of his concern about possible self-incrimination." *Id*. at 1107. Therefore, we said, in testifying against his client, the attorney "acted as both counselor and witness for the prosecution." *Id*.

These concerns are not present in this case. The statements made by Byrd and Fagan, while certainly born of frustration, do not evince conflicts of interest. What Volpentesta characterizes as a "breach of loyalty" is in truth his attorneys' exasperation with their demanding client. Furthermore, Volpentesta's overly broad reading of *Ellison* would effectively allow clients to "create" a conflict merely by accusing their attorneys of ineffectiveness and thereby forcing them to defend themselves to the court. Given the frequency with which clients request substitute counsel, such a broad rule would have sweeping and unwelcome implications for the ability of appointed attorneys to defend their clients. We agree with courts that have had occasion to address this issue, see *United States v. White*, 174 F.3d 290 (2d Cir. 1999), in rejecting such an unwarranted change in the law. We affirm the district court's decision not to remove counsel on the basis of a conflict of interest.

### B. Volpentesta's Waiver of his Right to Counsel

We now turn to Volpentesta's assertions that he did not knowingly, voluntarily, and intelligently waive his right to counsel. It is well-established that a criminal defendant may forgo representation and conduct his own defense, no matter how unwise that decision may be. *Faretta v. California*, 422 U.S. 806, 819 (1975). While the Constitution "does not force a lawyer upon a defendant," *Adams v. United States ex rel. McCann*, 317

U.S. 269, 279 (1942), the district judge must ensure that the defendant's decision to waive his right to counsel is knowing, voluntary, and intelligent, *Iowa v. Tovar*, 541 U.S. 77, 87 (2004) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). We review the district court's finding of knowing and voluntary waiver for an abuse of discretion. *United States v. Todd*, 424 F.3d 525, 530 n. 1 (7th Cir. 2005).

Volpentesta first argues that the district court, by denying his repeated motions to substitute attorneys, rendered Volpentesta's waiver of his right to counsel involuntary. He claims that he was effectively coerced into waiving counsel because Byrd and Fagan refused to subpoena the witnesses and documents he requested and otherwise meet his expectations of performance. Therefore, Volpentesta argues, he felt he had no choice but to represent himself in order to put forth an adequate defense. Indeed, the district court denied Volpentesta's second motion to represent himself after Volpentesta made comments that his "hand was being forced" by the court's refusal to replace his attorneys.

But Volpentesta mischaracterizes his decision to proceed *pro se* by incorrectly arguing that he was presented with the impossible choice of either accepting the services of incompetent attorneys or forgoing representation altogether. As discussed *supra*, Volpentesta's attorneys were entirely competent and Volpentesta's disagreement with them was a matter of strategy. In no way was Volpentesta "forced" to represent himself in order to obtain competent representation. Rather, he voluntarily elected to do so in order to pursue his own unique vision of how the case should be defended. We reject his

current efforts to characterize as "involuntary" a choice that was entirely of his own making.

We also note that even if the court had presented Volpentesta with the choice of accepting Byrd and Fagan's competent services or proceeding *pro se*—which it did not—that does not mean that Volpentesta's decision was involuntary. We have previously said that where a defendant repeatedly complains of his appointed counsel the district judge may give him an ultimatum to either work with his attorneys or represent himself. *See United States v. Alden*, 527 F.3d 653, 661 (7th Cir. 2008), *and United States v. Oreye*, 263 F.3d 669, 670 (7th Cir. 2001) (district judge's ultimatum to defendant to accept his attorney's services, hire private counsel, or proceed *pro se* did not effectively coerce defendant into representing himself); *United States v. Irorere*, 228 F.3d 816, 826 (7th Cir. 2000) (defendant's conduct constituted a decision to represent himself after refusing to work with four appointed attorneys). Because Byrd and Fagan provided competent representation to Volpentesta in spite of Volpentesta's refusal to cooperate with them, perhaps such an ultimatum would have been appropriate here. But we only raise the point to emphasize that the defendant who refuses to work with competent appointed counsel does so at his own risk.

We are also satisfied by the district court's thorough questioning to ensure that Volpentesta did not feel compelled or pressured into foregoing representation. It was not until Volpentesta's third motion for self-representation that the court, after having made exhaustive inquiries and receiving Volpentesta's unequivocal affirmation that his decision was

voluntary, granted his motion. We find no abuse of discretion on the part of the district court in finding a voluntary waiver.

Volpentesta further asserts that his waiver of counsel was not knowing and intelligent. In order to ensure a knowing and intelligent waiver, the district court must make a defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams*, 317 U.S. at 279). We consider four factors to determine whether a defendant's decision to proceed *pro se* was knowing and informed: (1) whether and to what extent the district court conducted a formal inquiry into the defendant's decision to represent himself; (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation; (3) the background and experience of the defendant; and (4) the context of the defendant's decision to waive his right to counsel. *United States v. Sandles*, 23 F.3d 1121, 1126 (7th Cir. 1994).

All four of these factors conclusively show that Volpentesta's waiver was knowing and intelligent. First, the district judge conducted several impressively detailed discussions with Volpentesta that established the defendant understood the risks of proceeding *pro se*. The court questioned Volpentesta about his education, his legal experience, his understanding of the charges against him, and his understanding of the penalties he faced if convicted. It was on this last point that the judge denied Volpentesta's first motion to represent himself, as he was not satisfied that Volpentesta fully understood the indictment. The district judge only granted

Volpentesta's third motion after further inquiry definitively
showed that Volpentesta did understand the charges against
him but was merely challenging the sufficiency of the indict-
ment. Volpentesta's current assertions that he did not in fact
understand the indictment are unavailing.

Second, other evidence in the record further establishes that
Volpentesta fully comprehended the dangers of representing
himself. When questioned by the judge regarding his second
motion to represent himself, Volpentesta stated: "I understand
that it's not a good idea for me to represent myself, and I
understand that counsel–it would be better for counsel to be
here before me to represent me." There is nothing in the record
that indicates Volpentesta did not completely understand his
right to counsel or what would happen should he proceed *pro
se*.

Third, Volpentesta's background and experience further
support the district judge's finding of a knowing and intelli-
gent waiver. Background and experience includes educational
achievements, prior experience with the legal system, and
performance at trial in the case at bar. *Sandles*, 23 F.3d at
1128-29. We consider the background and experience of the
defendant not in hopes of finding adequate legal training, but
merely to gauge whether he appreciated the gravity of his
waiver. *United States v. England*, 507 F.3d 581, 587 (7th Cir.
2007). Here, in response to the district court's questioning,
Volpentesta stated that he had graduated from high school
with a "C" average and had taken some community college
classes in business. He also said he had owned and operated
several construction businesses and had been involved in
approximately three bench trials as well as a bankruptcy.

Volpentesta had also been a defendant in a federal criminal case for bank fraud and the subsequent proceeding for revocation of his supervised release. Although Volpentesta did not represent himself in any prior proceedings, a defendant's prior experience with the judicial system "tends to show that he understood the charge against him was serious and that he was accepting a risk by representing himself." *United States v. Todd*, 424 F.3d 525, 533 (7th Cir. 2005) (citing *United States v. Egwaoje*, 335 F.3d 579, 585-86 (7th Cir. 2003)). Volpentesta also indicated his familiarity with the statutes charged, the Federal Rules of Evidence, and the Federal Rules of Criminal Procedure. Taken in sum, the court's inquiry into Volpentesta's background and experience shows that he was well aware of the consequences of his waiver and that he was proceeding with eyes open to the difficulties he would face without counsel.

Finally, the context of Volpentesta's decision to represent himself supports the district judge's finding of a knowing waiver. As discussed above, the record shows that Volpentesta disagreed with his attorneys over trial strategy: specifically, their refusal to file certain motions they deemed frivolous, interview the large number of witnesses Volpentesta requested, and immediately provide Volpentesta with printed copies of discovery materials. The record indicates that Volpentesta's waiver of his right to counsel was a strategic decision he made so that he could pursue the case as he desired. We have held that a defendant's tactical decision to proceed *pro se* supports a finding of a knowing waiver. *United States v. Bell*, 901 F.2d 574, 579 (7th Cir. 1990) (defendant's waiver of right to counsel was knowing where he elected to

represent himself because his attorney would not present an alibi defense). We find nothing in the context of Volpentesta's decision to represent himself that indicates that his waiver was anything but knowing and informed.

For these reasons, the district court did not abuse its discretion in finding that Volpentesta made a voluntary, knowing, and intelligent waiver of his right to counsel.

### C. Volpentesta's Motions for a Continuance

Volpentesta's final argument on appeal is that the district court abused its discretion by denying his motion for a 90-day continuance. Trial was initially scheduled for March 22, 2010. On March 5, 2010, the district court granted Volpentesta's motion to continue and reset the trial date for June 1, 2010. On May 21, 2010—11 days before trial—the court granted Volpentesta's motion to proceed *pro se*. Volpentesta then moved to continue the trial for 90 days. The district judge granted Volpentesta's motion in part, permitting him a three-week continuance. Volpentesta nonetheless argued, as he does now, that three weeks was insufficient time for him to prepare for trial.

We allow trial courts broad discretion in matters of continuances and reverse a district court's denial of a continuance only upon a finding of an abuse of discretion and a showing of actual prejudice. *United States v. Price*, 520 F.3d 753, 759-60 (7th Cir. 2008) (citing *United States v. Miller*, 327 F.3d 598, 601 (7th Cir. 2003)). We are particularly reluctant to find an abuse of discretion where, as in this case, a court denies a continuance to a defendant who decides to proceed *pro se* but then complains of not being prepared for trial. *See United States v.*

*Egwaoje*, 335 F.3d 579, 587-88 (7th Cir. 2003). Nonetheless, we will consider the following non-exhaustive list of factors when determining whether a district court abused its discretion in denying a motion to continue: (1) the amount of time available for preparation; (2) the likelihood of prejudice from denial of the continuance; (3) the defendant's role in shortening the effective preparation time; (4) the degree of complexity of the case; (5) the availability of discovery from the prosecution; (6) the likelihood a continuance would have satisfied the movant's needs; and (7) the inconvenience to the district court in light of its pending case load. *United States v. Williams*, 576 F.3d 385, 388 (7th Cir. 2009). While a trial date must be adhered to unless there are "compelling reasons" for granting a continuance, *United States v. Reynolds*, 189 F.3d 521, 527 (7th Cir. 1999), "myopic insistence" on proceeding to trial in the face of a valid request for a continuance is not appropriate, *United States v. Farr*, 297 F.3d 651, 655 (7th Cir. 2002).

The district court, after carefully considering the above factors, held that a three-week continuance struck the proper balance between Volpentesta's need for additional time to prepare for trial, the rights of the victims to be free from further delay, and the court's calendar. The district judge found that the third factor—the defendant's role in shortening the effective preparation time—weighed against a continuance because Volpentesta had shortened his preparation time by deciding to represent himself on the eve of trial. While Volpentesta should surely not be penalized for waiving his right to counsel, the court reasoned, he should likewise not be rewarded for dismissing his attorneys who would have been ready to proceed to trial on time. However, the court further

found that the other six factors weighed in favor of a continuance and that delaying the trial by three weeks would sufficiently address Volpentesta's concerns.

Volpentesta now argues, as he did before the district court, that the schedule the judge adopted was unrealistic in light of the voluminous discovery Volpentesta received in February and March of 2010. Because approximately 9,000 pages of discovery were tendered to him in the months leading up to trial, Volpentesta claims that it was unreasonable to expect him to be prepared by the June 21 trial date. But this belies the fact that Volpentesta already used this discovery as the basis for asking the court to continue the case from March 22 to June 1, which the court granted. Volpentesta also personally represented to the court on May 21—one-and-a-half weeks before the June 1 trial date—that he was fully prepared to go to trial as scheduled and raised no concerns about the discovery he received. Further, Volpentesta does little more than point to the large number of documents produced and does not identify any specific difficulty he had reviewing them. We find Volpentesta's arguments unavailing, and reiterate what we have said before: a defendant who elects to proceed *pro se* on the eve of trial does so at his own peril. *United States v. Avery*, 208 F.3d 597, 603 (7th Cir. 2000). Any difficulty Volpentesta had in preparing for trial was entirely of his own making, and we find no abuse of discretion in the district judge's order granting Volpentesta a three-week continuance.

After his initial motion for a 90-day continuance was denied, Volpentesta filed a motion to reconsider in which he claimed that he had received further discovery that warranted a continuance and that he had miscellaneous trial preparation

to complete before the trial date. The district judge again considered the relevant factors and denied Volpentesta's motion, finding that its previous determination was not erroneous and that circumstances had not changed so as to warrant an additional continuance. The court noted that the discovery disclosures Volpentesta complained of were not substantive, but were primarily the result of pre-trial inter-views conducted by the government that were turned over to Volpentesta "in an abundance of caution" against any claim that *Brady* or *Giglio* material had not been disclosed. The court also stated that the tasks Volpentesta complained of needing to complete had already been taken into account by the court in granting his earlier motion to continue.

Although it is not clear from Volpentesta's present appeal whether he asks us to reverse the district court's denial of his motion to reconsider, we will presume that he does. We find no fault in the district court's analysis, however, and therefore affirm it. First, the district court had already given Volpentesta additional time to complete his trial preparation (putting together a witness list, responding to the government's motion *in limine*, etc.), so another continuance was not warranted on that front. Second, the government's discovery disclosures (which amounted to a 78-page government exhibit list and a witness list) did not merit a continuance. Byrd and Fagan, whom he dismissed, would almost certainly have been prepared for trial even accounting for those new disclosures, and we find no abuse of discretion in the district court's judgment that Volpentesta should have been prepared as well.

Following the district court's denial of Volpentesta's motion to reconsider, on June 17, 2010, Volpentesta filed another

motion to continue the trial by at least 30 days. The district court denied this motion too. It is again unclear from Volpentesta's briefing whether he appeals the judge's order. We will presume that he does, and we again affirm the district court. In support of his June 17, 2010 motion to continue, Volpentesta argued that he received additional discovery from the government, he needed more time to prepare for trial, and he did not have enough access to discovery materials. The court analyzed the relevant factors set forth in this Court's precedent and found a continuance to be inappropriate. We find no error in the district court's order. As to Volpentesta's first complaint, the new discovery that Volpentesta complained of was a two-page letter describing statements witnesses made in pre-trial interviews. Volpentesta's other concerns had already been adequately considered by the court in its previous order denying his motion to reconsider.

Trial was thus set to commence on Monday, June 21, 2010. On June 18, Volpentesta once again moved to continue. This time, he argued that the government had not turned over the imaged copies of hard drives taken from his offices—copies which he claimed contained exculpatory evidence. Volpentesta asserted that the image files were crucial to his defense and that he needed time to examine them before he could proceed to trial. The district court denied Volpentesta's motion to continue, and we affirm.

In its order denying Volpentesta's motion the district judge once again thoroughly analyzed the seven factors a court must consider when evaluating a motion to continue. As the judge explained in his order, Volpentesta was entirely responsible for shortening the effective preparation time with respect to the

image files. Volpentesta waited until the literal eve of trial to bring the files to the court's attention despite ample evidence that he was aware much earlier that the files were not in his possession. In his briefing, Volpentesta claims that he did not raise the image file issue with the court prior because he assumed that the files were in the disks his attorneys gave him when he elected to proceed *pro se*, and he did not discover that the images were missing until June 17, 2010. However, as the district court noted, Volpentesta advanced the hard drive image issue in his May 24, 2010 motion to continue. The court granted Volpentesta a three-week continuance so that he could take care of necessary trial preparation, and assumed that if Volpentesta desired the files he would have made a Federal Rule of Criminal Procedure 16(a)(1)(E) request to copy the mirrored hard drive in the government's possession. Volpentesta made no such request, nor did he bring the missing files to the district court's attention in his June 8, 2010 motion to reconsider or his June 17, 2010 motion to continue. Not only are Volpentesta's claims that he was ignorant of the missing files until June 17 suspiciously devoid of corroboration, but it defies reason that Volpentesta would not notice that the files were missing until the Friday before his Monday trial date if they were as critical as he claims. We therefore agree with the district court that Volpentesta's failure to raise the issue earlier shortened his effective preparation time.

The district court also determined that Volpentesta had not adequately shown how he would be prejudiced by the court's denial of his motion for a continuance or how a continuance would satisfy his needs. Volpentesta claimed that the image files could contain emails showing his good faith efforts to

resolve issues with home buyers, exculpatory photos of work done properly, and payment records. But Volpentesta has yet to offer more than conjecture at what *could* be in the files, not what he knows them to contain. Even now, in his briefing before this Court, Volpentesta states that he had "hoped to find" the items listed above in the image files, and that he "believed that the computers contained" this vaguely exculpatory evidence. Given the high degree of uncertainty that these files contained anything that would have aided Volpentesta's defense, we find no abuse of discretion in the district court's finding that a continuance would do little to satisfy Volpentesta's needs and that denying Volpentesta's last-ditch effort to delay trial would not prejudice him.

The district court further determined that the complexity of the case and the availability of discovery from the prosecution did not weigh in Volpentesta's favor, and we do not disagree. We also agree in full with the court's judgment that granting Volpentesta another continuance would impose a significant burden on the court's schedule as well as on the rights of victims to proceedings free from unreasonable delay.

Taken in sum, we find that the district court did not abuse its discretion in granting Volpentesta a continuance and denying his three subsequent motions. The district court ensured that Volpentesta had sufficient time to prepare for his trial while also giving proper consideration to the rights of victims and the needs of the court. In addressing Volpentesta's motions for continuances, the district judge never chose any option that was "not within the range of permissible options from which we would expect the trial judge to choose under

the circumstances." *United States v. Depoister*, 116 F.3d 292, 294 (7th Cir. 1997). We therefore affirm.

### III. Conclusion

For the above reasons, we AFFIRM Volpentesta's conviction.