In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-3461

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSEPH BANKS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 CR 688 — **Rebecca R. Pallmeyer**, *Judge.*

ARGUED DECEMBER 4, 2015 — DECIDED JULY 8, 2016

Before POSNER, FLAUM, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Defendant Joseph Banks was convicted of committing or attempting to commit four separate robberies over a 12-month period between 2007 and 2008, and was sentenced to 432 months' imprisonment. On appeal, Banks challenges both his conviction and his sentence. He claims that the district court violated his right to counsel under the Sixth Amendment not only by permitting

him to waive his right to counsel and proceed *pro se* on the eve of trial, but also by not rescinding the waiver when it became clear during trial that he would forgo participating in most of the trial proceedings. We disagree. The district court permitted Banks to proceed *pro se* only after concluding that his waiver of his right to trial counsel was both knowing and voluntary.

In addition, Banks argues that the district court committed procedural error during his sentencing hearing by failing to adequately justify his sentence, by failing to address several of his principal mitigation arguments, and by treating the federal sentencing guidelines as mandatory. However, we find that the district court adequately explained the reasons for Banks's sentence, addressed his principal mitigation arguments, and did not treat the Guidelines as mandatory. So we affirm the district court's judgment.

## I.  BACKGROUND

Banks was charged with two counts of bank robbery and two counts of attempted bank robbery in connection with four separate incidents that occurred between August 2007 and August 2008. All four incidents involved the use of a gun, and two were particularly violent. On one occasion, Banks pulled one bank employee to the ground and pointed a gun at him. Afterward, he hit another employee over the head with the gun, causing the employee to turn pale, fall to the floor, and hyperventilate. On another occasion, Banks forced a bystander into the bank at gunpoint.

### A.  Trial Proceedings

Over four years elapsed between the filing of a criminal complaint against Banks in September 2008 and the com-

mencement of his trial in December 2012. Much of the delay is attributable to Banks repeatedly terminating his counsel—five separate times in total. The final termination—the only relevant one on appeal—took place on the first day of trial.

Shortly before jury selection was to commence, Banks's counsel informed the district court that Banks had "relieved" him, and that Banks intended to proceed "*in propria persona*" (which the counsel understood to mean *pro se*). A colloquy between Banks and the district court ensued in which Banks insisted that the court lacked jurisdiction over him. After the court asked Banks's counsel to stay on in a stand-by capacity, the colloquy continued. Banks was informed of the charges against him and the potential penalties he would face if convicted. He confirmed that he intended to represent himself at trial, and noted that he had been studying the law while in custody. He also confirmed he understood that proceeding *pro se* was a serious decision that no one had pushed him to make, and that the court would not provide him with any advice. The court ultimately concluded that Banks had knowingly and voluntarily waived his right to counsel, and the trial continued.

Banks's participation in the trial was minimal. He declined to object to the government's motions *in limine*, strike any jurors, present his own witnesses, cross-examine the government's witnesses, object to any of the government's questions, or comment on the jury instructions. Rather, his participation was often confined to stating that he was "captive" and would not be "partaking in this proceeding." In addition, he repeatedly asked (unsuccessfully) to be excused from attending the trial, and rebuffed the district judge's numerous suggestions that he permit his standby counsel to

represent him. Banks did attempt, however, to make opening and closing statements, but when he failed to confine his remarks to trial evidence (expected or presented) the district judge cut him off. At the conclusion of the trial, the jury convicted him on all four counts.

### B.  Post-Trial Proceedings

Several days after the jury rendered its verdict, Banks escaped from the downtown Chicago prison where he was being held pending sentencing. He and his cellmate cut a hole in the cinderblock wall and, using a rope comprised of bedsheets and dental floss, rappelled 17 stories down the building's exterior wall in the middle of the night. After a two-day manhunt, law enforcement apprehended Banks several miles from the prison. (The government initially charged Banks with escaping from federal custody but later dismissed the complaint voluntarily.)

Shortly after Banks was returned to custody, he consented to representation by counsel, who filed on his behalf a motion for a new trial and for acquittal. Banks argued that he had not knowingly or voluntarily waived his right to counsel, and that the district court should have permitted his stand-by counsel to make a closing argument for him upon terminating his closing remarks. The district court denied the motion, concluding that Banks clearly demonstrated that he did not want to be represented by counsel and that the court was not required to compel attorney representation. The court also emphasized that she had repeatedly warned Banks to focus his closing argument on admitted evidence before she cut him off.

In preparation for sentencing, the probation office pre-pared a presentence report (PSR) that calculated a total of-fense level of 38, a criminal history category of VI, and a Guidelines range of 360 to 390 months' imprisonment. In advocating for a 180-month sentence, Banks argued that his criminal history overstated the degree of harm he posed to the public, and that a shorter sentence was warranted due to his poor self-representation at trial and the likelihood that the harsh prison conditions he had endured post-escape would continue. The government advocated for a 540-month sentence and asked the court take Banks's escape into ac-count. The district court adopted the PSR's offense-level and criminal-history calculations, and concluded that the Guide-lines recommended a sentence of 360 months' imprisonment to life. After hearing arguments and testimony from both parties, the court sentenced Banks to 432 months' imprison-ment.

## II.  ANALYSIS

On appeal, Banks claims that the district court erroneous-ly concluded that he had knowingly and voluntarily waived his right to counsel before jury selection occurred, and that the court should have revoked his waiver when Banks re-fused to participate in the trial. Banks also argues that the district judge committed various procedural errors in arriv-ing at and explaining his sentence. We disagree.

### A.  No Error to Allow Banks to Represent Himself

Both parties here insist that we generally review a waiver of one's right to counsel for abuse of discretion and cite cases that are in accordance. But as the government correctly con-cedes, there is a separate line of cases indicating that de novo

review is the proper standard. *See generally United States v. Clark*, 774 F.3d 1108, 1112 (7th Cir. 2014); *United States v. Todd*, 424 F.3d 525, 530 n.1 (7th Cir. 2005). We need not resolve this disagreement, since Banks's claims fail under either standard.

### 1.  Banks's Waiver Was Knowing and Voluntary

The Constitution guarantees all defendants the right to counsel during a criminal trial. *Faretta v. California*, 422 U.S. 806, 807 (1975). It is equally well established, however, that a criminal defendant may waive that right and proceed *pro se* when he knowingly and voluntarily elects to do so. *Id.* at 834–35. When such a waiver is timely made by a competent defendant, a trial court may not deny it. *Imani v. Pollard*, No. 14-3407, 2016 WL 3434673, at *3 (7th Cir. June 22, 2016).

Waiver is permissible even though the defendant "may ultimately conduct his own defense to his detriment." *United States v. Avery*, 208 F.3d 597, 601 (7th Cir. 2000). But he must still "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835 (citation and internal quotation marks omitted); *see also United States v. Boultinghouse*, 784 F.3d 1163, 1171 (7th Cir. 2015) (instructing trial courts to "engag[e] the defendant in a colloquy"). To determine whether a waiver was knowing and voluntary, we examine the record as a whole and consider four factors: (1) the extent of the district court's formal inquiry into the defendant's decision; (2) the evidence in the record about whether the defendant understood the dangers and disadvantages of self-representation; (3) the defendant's background and experience; and (4) the context of the defendant's decision. *United*

*States v. Volpentesta*, 727 F.3d 666, 677 (7th Cir. 2013) (citations omitted).

We conclude that Banks knowingly and voluntarily waived his right to counsel. The court's colloquy with Banks was wide-ranging and thorough. She inquired into Banks's legal education, as well as his familiarity with the Federal Rules of Evidence and Criminal Procedure, history of self-representation, and objection to the court's jurisdiction over him. In addition, the court stressed that if Banks proceeded *pro se*, she would not advise him about how to proceed in the courtroom and would follow the Federal Rules of Evidence regardless of whether he made the appropriate objections.

This colloquy adequately apprised Banks of the dangers of proceeding *pro se*. The district court had the government explain the charges and possible penalties and reiterated the maximum penalties—80 years in prison and a $1,000,000 fine. She also repeatedly told Banks that deciding to proceed without counsel was a very serious decision, and advised that he should allow his appointed counsel to represent him. *See United States v. Hoskins*, 243 F.3d 407, 409 (7th Cir. 2001) (upholding waiver where district court advised defendant that he "would be far better off being defended by a trained lawyer and that it would be 'unwise' to defend himself because of the complexity of the legal issues involved").

The context of Banks's decision further suggests that his waiver was knowing and voluntary. Banks fired his trial counsel (at least in part) in order to make his sovereign-citizen defense that the court lacked jurisdiction over him.[1]

---

[1] "Defendants claiming to be 'sovereign citizens' assert that the federal government is illegitimate and insist that they are not subject to its

We have repeatedly observed that "[a] waiver is likely knowing and voluntary if the defendant gave it for strategic reasons or after repeatedly rejecting the assistance of counsel." *United States v. England*, 507 F.3d 581, 588 (7th Cir. 2007); *see also, e.g.*, *Volpentesta*, 727 F.3d at 678 (finding that defendant's waiver "was a strategic decision he made so that he could pursue the case as he desired"). Moreover, the district judge clearly informed Banks that, although she was denying his sovereign-citizen argument, he was free to appeal that ruling at the conclusion of the case.

Although Banks was not a legal practitioner, he noted that he had been engaged in legal study while awaiting trial and that he was familiar with the Federal Rules of Evidence and Criminal Procedure. This alone may not demonstrate that Banks "appreciated the gravity of his waiver." *Volpentesta*, 727 F.3d at 677; *see id.* (concluding that the defendant's background supported a finding of waiver where he had graduated from high school and had taken community college classes, had been involved in three bench trials and a bankruptcy in connection with his business, and had been a defendant in an earlier criminal trial). However, all four factors, taken together, clearly demonstrate that Banks's waiver was both knowing and voluntary—a finding that Banks himself supported by expressly confirming during the colloquy that his "decision to proceed here without a lawyer [was] entirely voluntary," and that no one had "push[ed]" him into his decision.

---

jurisdiction. The defense has 'no conceivable validity in American law.'" *United States v. Jonassen*, 759 F.3d 653, 657 n.2 (7th Cir. 2014) (quoting *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990)).

Banks contends that the waiver inquiry was unnecessary, since he did not "clearly and unequivocally" invoke his right to self-representation to begin with, but instead merely conveyed his desire to fire his counsel. In support, Banks points to the following discussion at the outset of his colloquy with the district judge:

> THE DEFENDANT: Objection, your Honor. I am here. I am appearing *in propria persona* today.
>
> THE COURT: All right. And that means you want to represent yourself.
>
> THE DEFENDANT: No. I am here *in propria persona*.
>
> *     *     *     *
>
> THE COURT: Are you representing yourself?
>
> THE DEFENDANT: No.
>
> THE COURT: Who is representing you?
>
> THE DEFENDANT: My status is *sui juris*. I'm here *in propria persona* today.

But when viewed in context of the remainder of the colloquy, however, it's clear that Banks was preoccupied with making his sovereign-citizen defense known to the court; he was not asking that replacement counsel be appointed. For example, the district court began asking questions relating to knowledge and voluntariness immediately after the exchange below:

> THE COURT: All right. Well, I will tell you what. I understand that you are relieving Mr. Brindley and his office from representing you. I am going to ask that they remain here as standby counsel. But you are certainly free under the Constitution to proceed on your own.
>
> THE DEFENDANT: *Exactly. That's what I so choose*, your Honor.

(emphasis added). So the district court correctly understood Banks was waiving his right to counsel.

## 2. No Error in Not Rescinding Waiver During Trial

Banks argues that his refusal to participate in the trial proceedings should have prompted the district court to rescind his waiver. But Banks was not completely unwilling to participate—he attempted to make opening and closing statements. And his unwillingness to focus on facts during those arguments, coupled with his general inaction, underscores his strategy of pressing his sovereign-citizen viewpoint. The fact that that strategy was unwise, without more, is irrelevant. *See, e.g.*, *United States v. Berry*, 565 F.3d 385, 391 (7th Cir. 2009) ("[T]he right to self-representation cannot be denied merely because a defendant lacks legal knowledge or otherwise makes for a poor advocate.").

Nor did Banks engage in the sort of obstructionist behavior that warranted waiver rescission in *United States v. Brock*, 159 F.3d 1077 (7th Cir. 1998), and *United States v. Brown*, 791 F.2d 577 (7th Cir. 1986). Although Banks's refusal to participate in the proceedings, repeated challenges to the court's jurisdiction, and repeated requests to be removed from the courtroom may have delayed the proceedings and tested the patience of the district court and the government, they in no way "made it practically impossible [for the trial] to proceed." *Brock*, 159 F.3d at 1080–81 (observing that defendant "refused to cooperate, even minimally, with the court," even after several contempt citations). More importantly, even if Banks's actions did warrant rescission—and they did not— the district judge was not *obligated* to rescind. *See Berry*, 565 F.3d at 391 ("The Constitution *may* have allowed the trial judge to block his request to go it alone, but it certainly

didn't require it."); *accord United States v. Anzaldi*, 800 F.3d 872, 879 (7th Cir. 2015); *United States v. Jonassen*, 759 F.3d 653, 661 n.4 (7th Cir. 2014).

Banks's reliance on *Cain v. Peters*, 972 F.2d 748 (7th Cir. 1992), is misplaced. As Banks notes, we observed in *Cain* that "defendants forfeit self-representation by remaining silent at critical junctures before or during trial." *Id.* at 750. What Banks ignores, however, is the fact that *Cain* involved a defendant who *acquiesced* to representation by counsel by staying silent throughout the proceedings. In doing so, he effectively forfeited any right to argue later on that he was denied his right to represent himself. This aspect of *Cain* does not apply to defendants who proceed *pro se* but decide for strategic reasons to remain silent.

### 3. Banks's Other Arguments Are Meritless

Banks attacks the district court's waiver decision on several other grounds, all of which lack merit. First, he suggests that the court should have rejected his waiver as untimely. But the request was timely, since it was made before the jury was empaneled. *United States v. Johnson*, 223 F.3d 665, 668 (7th Cir. 2000). And even if the request was untimely, Banks does not claim that the court was *required* to reject it. Nor could he. *See United States v. Oakey*, 853 F.2d 551, 553 (7th Cir. 1988) (concluding that "where a request to proceed *pro se* is untimely, a court *may, in its discretion*, deny the motion" (emphasis added)); *cf. United States v. Kosmel*, 272 F.3d 501, 506 (7th Cir. 2001) (observing that a district court "has broad discretion in granting mid-trial requests to proceed pro se").

Banks also contends that the trial itself somehow violated his due process rights because the government was not

forced to present its case subject to an adversarial process (because of Banks's nonparticipation). But poor self-representation alone does not amount to a due process violation. *United States v. Egwaoje*, 335 F.3d 579, 587 (7th Cir. 2003) (rejecting claim that *pro se* defendant's "readily apparent deficiency in performance at trial offends not only the defendant's rights but also undermines public confidence in the integrity of judicial proceedings"); *cf. Faretta,* 422 U.S. at 834 n.46 ("[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'").

Lastly, Banks argues that the district court erred in failing to acknowledge her authority to reject his *pro se* request. However, Banks has not cited any case law (and we are not aware of any) that requires a judge to *expressly* reference this authority. Nor does the record suggest that the district court misunderstood her authority; indeed, had she believed she was obligated to approve Banks's *pro se* request, both the lengthy colloquy and her ultimate knowledge/voluntariness finding would have been unnecessary. In sum, the court correctly permitted Banks to represent himself during the trial.

### B.  No Procedural Errors During Banks's Sentencing

Banks argues that the district court procedurally erred in determining and explaining his 432-month sentence. Specifically, he claims that the court failed to address three of his principal mitigation arguments, failed to adequately explain his sentence, and treated the Guidelines as mandatory.

We review de novo whether a district court has committed procedural error during sentencing. *United States v. Marin-Castano*, 688 F.3d 899, 902 (7th Cir. 2012). Procedural error

occurs when a court "fail[s] to calculate (or improperly calculate[s]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). District courts must also "consider a defendant's principal, nonfrivolous arguments for lenience." *United States v. Martin*, 718 F.3d 684, 687 (7th Cir. 2013) (per curiam). In considering such arguments, the judge must demonstrate that she "has considered the parties' arguments and has a reasoned basis for exercising [her] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). A brief explanation is often acceptable "where the context and record make clear the reasoning underlying the district court's conclusion." *United States v. Schroeder*, 536 F.3d 746, 755 (7th Cir. 2008). We typically will not find a sentence to be procedurally unreasonable so long as the record demonstrates that the court meaningfully considered the defendant's arguments, "even if implicitly and imprecisely." *United States v. Diekemper*, 604 F.3d 345, 355 (7th Cir. 2010).

### 1. Sentence Adequately Explained

Banks argues that the district court failed to explain why the 432-month sentence was necessary. While Banks concedes that the court explicitly referenced a need to protect society and help Banks "recognize, in a realistic way, who he is," he suggests that the 180-month sentence he proposed may well have satisfied these objectives. We find, however, that although the district court may not have discussed the § 3553(a) factors in a checklist fashion—which it was not required to do, *United States v. Perez*, 581 F.3d 539, 548 (7th Cir.

2009)—the court provided an adequate statement of its reasons at the sentencing hearing.

In concluding that a "very substantial" sentence was required, the district court emphasized that Banks had engaged in "extremely costly, menacing, dangerous activity." She discussed the violent nature with which Banks wielded his weapon, as well as the emotional and financial trauma that his victims suffered in the wake of his robberies. The court also referenced Banks's personal history and characteristics—in particular, his refusal to accept full responsibility for his crimes, his artistic talents, and his troubled upbringing. And the court touched upon the available alternative sentences, as she compared the government's proposed 45-year sentence and Banks's own suggested sentence against the retributivist and public-safety reasons that, in the court's mind, warranted a "significant" sentence. In sum, the district court's analysis reflects "an individualized assessment based on the facts presented" that allows for "meaningful appellate review and … promote[s] the perception of fair sentencing." *Gall*, 552 U.S. at 50.

### 2.  Mitigation Arguments Addressed

Banks also argues that during his sentencing hearing, the district court failed to address three of his principal mitigation arguments: (1) that the "unusually harsh" confinement conditions he had endured following his escape would likely continue post-sentencing; (2) that his criminal-history category overstated his prior criminal conduct; and (3) that his conviction was based on evidence that was never "meaningfully tested," due to his poor self-representation. While the court's response to these arguments was indirect and brief, it was not so deficient as to constitute procedural error.

The district court adequately addressed Banks's argument regarding confinement conditions. The court began by acknowledging that it "may very well be true" that prison officials "overreacted" to Banks's escape with the confinement conditions they imposed on him. She then observed that "trying to thwart even the simple efforts to maintain security in a federal correctional facility is really a step too far," and explicitly referenced the balance between "the harm that's been done to the victims" with "the harm that we are now going to do to the defendant in return."

The district court also adequately addressed Banks's argument that his criminal-history category overstated his earlier unlawful actions. The court found Banks's description of himself as "anti-gun" untenable, since he had used a gun, often violently, in all four of his robberies. She also rejected the notion that Banks was a "peacemaker," noting that he "made havoc in this case" and "created very serious terror and disturbance in several banks and for several victims." And she described Banks's robberies as "the conduct of a violent man," described him generally as "a threat and a menace to anybody who might work in a bank," and discussed his escape "as part of a larger pattern of [his] rejection of the system."

In addition, the district court indirectly addressed Banks's argument regarding his poor self-representation, insofar as she criticized him for "reject[ing] the services of lawyers … who prepared amply for his defense, [and] who, throughout the trial, day after day … stepped into the courtroom." She also noted that these attorneys "begged" her at closing argument to "allow them to make a closing for [Banks], because they saw an opportunity for a defense."

Critically, the court disparaged Banks for "cho[osing] to adopt the sovereign citizen defense, which he confesses now was an act." When viewing these statements in the aggregate, it's clear that the district court found Banks to be undeserving of any sympathy for deciding to proceed *pro se* throughout the trial.

### 3. Guidelines Not Treated as Mandatory

Finally, Banks contends that the district court treated the Guidelines as mandatory, based on a brief colloquy between the court and a probation officer at the hearing. After announcing the 432-month sentence, the district court noted that the sentence on each of the four counts would run concurrently. But doing so would not have resulted in the announced sentence, since none of the counts carried a maximum that exceeded 240 months. The probation officer called the court's attention to this error, prompting the court to clarify that Counts I and II would be served consecutively to Counts III and IV.

This clarification was consistent with the Guidelines. *See, e.g.*, *United States v. Craig*, 703 F.3d 1001, 1002 (7th Cir. 2012) (per curiam) (explaining that U.S.S.G. § 5G1.2(d) "tell[s] the judge to sentence consecutively when necessary to bring the total sentence into the guidelines range"). But that, by itself, does not demonstrate that the district court considered herself to be *bound* by the Guidelines. We have explained that when the Supreme Court declared the Guidelines to be advisory, "it expected that many (perhaps most) sentences would continue to reflect the results obtained through an application of the Guidelines." *United States v. Mykytiuk*, 415 F.3d 606, 607 (7th Cir. 2005). Banks also ignores several facts that indicate the court believed herself to be unbound—she

entertained Banks's argument for a below-Guidelines sentence and imposed the 432-month sentence *before* discussing whether and to what extent the counts would run concurrently or consecutively. So Banks has failed to establish that the district court committed any procedural errors.

### III.  CONCLUSION

We AFFIRM the district court's judgment.