In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1388

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ARTURO BUSTOS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 CR 00668-4 — **Ronald A. Guzmán**, *Judge.*

ARGUED NOVEMBER 5, 2018 — DECIDED JANUARY 10, 2019

Before BAUER, ROVNER, and ST. EVE, *Circuit Judges*.

BAUER, *Circuit Judge.* Arturo Bustos conspired with his co-defendants to deliver 995 grams of heroin to an undercover officer. Bustos pleaded guilty to one count of conspiracy to distribute a controlled substance and was sentenced to 100-months imprisonment. Bustos now appeals his 100-month sentence. For the reasons that follow, we affirm.

## I. BACKGROUND

Arturo Bustos, Enemicio Bustos, Omar Landa, and Tomas Landa conspired to sell heroin to an undercover officer ("UCO"). Arturo and Enemicio engaged in multiple phone conversations with the UCO, arranging a date, time, and location to sell 995 grams of heroin for $180,000. On October 12, 2016, Enemicio drove Arturo to the meet location. Arturo entered the UCO's car and instructed him to drive to a second location where he would receive the heroin. At the second location, Omar entered the vehicle to verify that the UCO brought the $180,000 in cash. With the cash verified, Tomas then arrived carrying a firearm and the 995 grams of heroin.

The four men were charged with conspiracy to possess and distribute a mixture containing 100 grams or more of heroin on October 12, 2016, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count Two), and distribution of 100 or more grams of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (2) (Count Three). Enemicio was additionally charged with violating 21 U.S.C. § 841(a)(1) for a previous heroin deal which took place on September 9, 2016 (Count One). Tomas was additionally charged with possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count Four). Enemicio, whose criminal history consisted of one prior burglary charge, was sentenced to 65 months of imprisonment. Tomas received a 110-month sentence.

Arturo admitted that he agreed to distribute 995 grams of heroin to the UCO and pleaded guilty to Count Two of the indictment. He admitted that he and Enemicio engaged in

phone conversations with the UCO to set up the transaction and that he and Omar met with the UCO to verify he had the cash necessary to buy the heroin.

At the sentencing hearing, the district court calculated Arturo's criminal history category as V for the following reasons. On September 24, 2009, Arturo was convicted of manufacturing and delivering cocaine. Although an arrest warrant was issued, and he was charged in 1990, he avoided arrest and sentencing until 2009. If the 1990 case had proceeded at a more typical pace, this conviction would have been too old to enhance the criminal history calculation and resulted in a criminal history category of III, which carries a recommended sentencing range of 70 to 87 months. Arturo was also convicted of two newly committed offenses: possession of a controlled substance and possession of an altered identification card. Arturo committed the instant offense while on parole from his 12–year sentence for the above convictions. Arturo also had two convictions that were too old to warrant additional criminal history points.[1]

The criminal history category of V, together with the adjusted offense level of 25 based on the quantity of heroin, resulted in an advisory sentencing range of 100-125 months imprisonment, with a statutory mandatory minimum sentence of 60 months. Arturo made no objection to the Guidelines calculation.

---

[1]    In 1979, Arturo was convicted of distribution of heroin and was sentenced to five years' probation. In 1985, he was sentenced to one year of probation for resisting a peace officer.

Rather than argue the calculations were incorrect, Arturo argued a below-Guidelines sentence of 60 months imprisonment was warranted under 18 U.S.C. § 3553(a). He asserted the criminal history calculation "over represented" his criminal history due to the time between the 1990 crime and his conviction. Arturo also argued that his co-defendants played a larger role in the conspiracy and a lower sentence would avoid a disparity between his sentence and Enemicio's. Arturo offered his advanced age, poor health, and low likelihood of recidivism as additional factors favoring a downward departure from the Guidelines range. Lastly, Arturo argued that he faced harsh conditions in pre-trial detention due to his health and would face harsh conditions in prison because of his status as a deportable alien. This status, he asserted, prevented him from accessing Bureau of Prison programs and resources including the residential drug treatment program, which could reduce his term of imprisonment by one year.

After Arturo's argument, the court went over the factors it considered important in determining the sentence. The court cited the seriousness of trafficking a significant amount of heroin, the disastrous effects of the illicit drug trade on communities, and the fact that Arturo had been involved in dealing drugs for over 30 years. The court noted that he squandered the opportunity to correct his behavior after receiving only probation for his 1979 conviction and found it inappropriate to give him a below-Guidelines sentence considering his prior history and the fact that the instant offense was committed while he was on parole for his 2009 conviction. The court considered the fact that Arturo came into the conspiracy at a later stage than Enemicio but concluded

that his role was significant. The court discussed several of the mitigating factors emphasized by Arturo, including his addiction problems and his poor childhood.

Taking all of this into account, the court imposed the lowest possible within-Guidelines sentence of 100-months imprisonment.

## II. ANALYSIS

This court reviews *de novo* claims of procedural error at sentencing. *United States v. Banks*, 828 F.3d 609, 618 (7th Cir. 2016). Procedural error occurs when a court "fails to calculate (or improperly calculates) the Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). The district court must also "consider a defendant's principal, nonfrivolous arguments for lenience." *United States v. Martin*, 718 F.3d 684, 687 (7th Cir. 2013) (*per curiam*). In considering such arguments, the judge must demonstrate that he "has considered the parties arguments and has a reasoned basis for exercising his own legal decision-making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007).

The transcript of the sentencing hearing shows that the district court gave thorough consideration to the facts of this case and to the defendant's arguments. It discussed the seriousness of the offense and rejected Arturo's attempt to minimize the role he played in the conspiracy. The court did so correctly. Arturo admitted in his plea agreement that he helped to arrange the meeting location for the drug deal, and partici-

pated in determining the quantity and price of the drugs to be sold. Arturo then personally participated in the drug deal by meeting with the UCO. Though he was not involved in the conspiracy from the outset, once he joined he was involved completely and played a critical role.

The court also rejected Arturo's argument that his past criminal conduct was over-represented. There is no error in the court's rejection of Arturo's argument that his avoidance of arrest and sentencing for nearly 20 years was mitigating. To conclude otherwise would minimize Arturo's conduct and reward his successful flight from justice. The court appropriately determined that Arturo's criminal history enhanced the need to promote respect for the law and provide deterrence. This history of criminal conduct explains the disparity between Arturo's sentence and his co-defendants. Arturo's more extensive criminal history warranted a longer sentence.

While the court did not directly comment on Arturo's health or status as a deportable alien in its discussion of the § 3553(a) factors at the sentencing hearing, we do not require district courts to treat sentencing factors as a checklist or to spell out their analyses of each factor. See, e.g., *United States v. Panaigua-Verdugo*, 537 F.3d 722, 728 (7th Cir. 2008) ("The district court need not address each § 3553(a) factor in checklist fashion, explicitly articulating its conclusion for each factor; rather, the court must simply give an adequate statement of reasons, consistent with § 3553(a), for believing the sentence it selects is appropriate."). It is enough that the record confirms that the court has given meaningful consideration to the § 3553(a) factors. *United States v. Williams*, 425 F.3d 478, 480

(7th Cir. 2005). Arturo has merely demonstrated through his arguments and legal authority cited that the court could have exercised its discretion with a more lenient sentence.

Arturo's argument that recidivism rates for those over 60 years of age is "nearly zero percent" rings hollow in light of the fact that Arturo committed this third drug offense at the age of 62. The district court noted:

> It is tragic that [Arturo] is 62 years of age, and at this time in this life finds himself in this situation with really nothing. But there is nothing I can do about the defendant's own deliberate choice of lifestyle. He made these decisions that brought him here today, to continue to commit offenses, to continue to sell illegal drugs, to continue to violate the law even into his late years. I see no likelihood that this defendant's age will in any way be a deterrent to further criminal conduct.

And as to his health, Arturo presented no evidence that the Bureau of Prisons would be unable to provide him with adequate healthcare.

The district court rejected Arturo's argument regarding his deportable status implicitly, noting that the fact that Arturo would be deported would make him unlikely to face additional state charges after his release. The court also stated, after discussing the § 3553(a) factors, that Arturo would not be required to report to a probation office for supervised release nor would the conditions of his supervised release be applicable if he is deported to Mexico. The court further declared that

Arturo should be given an opportunity to participate in the residential drug treatment program by the Bureau of Prisons despite his immigration status.

Arturo also argues that the 100-month sentence was substantively unreasonable. We presume that a within-Guidelines sentence is substantively reasonable. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). Arturo bears the burden of overcoming that presumption of reasonableness. *United States v. Cunningham*, 883 F.3d 690, 701 (7th Cir. 2018). He attempts to rebut that presumption by arguing his sentence "results in essentially a life sentence driven primarily by the Appellant's over-represented criminal history despite the Appellant's relatively minor role in the instant offense." The district court rejected the argument that Arturo's criminal history was over-represented, and this court agrees. Arturo has not shouldered his burden of showing the sentence was unreasonable, and failed to show that the district court did not give meaningful consideration to the § 3553(a) factors.

### III. CONCLUSION

Meaningful consideration was given to Arturo's arguments in favor of mitigation, the 100-month within-Guidelines sentence was substantively reasonable, and the sentencing order is AFFIRMED.