NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 7, 2022
Decided June 29, 2022

**Before**

DAVID F. HAMILTON, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 21-2506

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 19-CR-85 |
| RICHARD D. ABBOTT, <br> *Defendant-Appellant*. | Lynn Adelman, <br> *Judge*. |

**O R D E R**

After three appointed attorneys withdrew from representing Richard D. Abbott, the district court granted Abbott's request to represent himself at his trial. He later pleaded guilty to multiple counts of bank robbery. In this appeal, he argues that the district court violated his Sixth Amendment right to counsel by allowing him to proceed pro se after a colloquy that was deficient under *Faretta v. California*, 422 U.S. 806 (1975). Because enough information indicates that Abbott's invocation of his right to represent himself was knowing, voluntary, and unequivocal, we affirm.

In May 2019, a grand jury indicted Abbott on three counts of robbery, 18 U.S.C. §§ 2113 (a), 2, one count of attempted robbery, *id.* §§ 2113(a), (d), 2, and two counts of using a firearm during and in relation to a crime of violence, *id.* § 924(c)(1)(A)(i). Appointed counsel entered an appearance shortly after his arrest but moved to withdraw after Abbott filed his own motion for a speedy trial. Counsel asserted that her communication with Abbott had broken down; Abbott refused to let her speak at their meetings and felt that she was not working quickly enough.

After granting the motion to withdraw, the district court appointed a second attorney, but Abbott continued filing pro se motions and not coordinating with counsel. For instance, he moved to suppress the results of a live line-up and a photo array before his counsel did. Abbott also moved for pretrial release and to dismiss the indictment before his second attorney moved to withdraw.

At the ensuing hearing in September 2020, Abbott emphasized that he believed counsel was not moving quickly enough on his case, and he complained that an independent investigation had not been conducted. Abbott did not "want to keep prolonging things" and conceded that he would keep his attorney if counsel agreed to speak to the witnesses Abbott had in mind. He further emphasized that even though he did not have a GED, he had knowledge of criminal law and disagreed with his attorney's decision not to file certain motions. Abbott's counsel explained that Abbott had accused him of ineffective assistance and asked him to withdraw. He detailed that communication had broken down with Abbott, and that he feared for his personal safety based on a comment by Abbott. The court allowed Abbott to elaborate on his view of the case before granting counsel's motion to withdraw. The judge expressed concern that Abbott would "have the same problem with the next lawyer" if Abbott insisted on ignoring the advice of counsel and persisted in filing motions that had little chance of success.

While awaiting a new attorney, Abbott continued to self-advocate, filing a motion for the "biased" district judge to recuse himself, which was denied. The court then appointed a third attorney for Abbott. But Abbott continued to pursue his own litigation strategy, including by directly calling at least one robbery victim from jail. Just weeks after the appointment, both counsel and Abbott filed motions for withdrawal, citing communication problems.

In December 2020, the district court began the telephonic hearing on those motions by observing that appointed counsel was "well respected" and that "it's pretty hard to deal with criminal cases without any lawyer." Abbott voiced his belief that his

counsel was not representing him in good faith and was colluding with the government. Abbott declared that he wished "to proceed pro se, and that's my final decision." He urged the court to allow him to proceed to trial immediately to vindicate his speedy-trial right.

The court acknowledged Abbott's frustrations but advised that proceeding pro se was "really not a good idea because [Abbott was] not experienced at cross examination or arguing to jurors." Abbott remained adamant, insisting: "I have a right to do it, you know, so there's no convincing." He elaborated that he was 34, knew what he was doing, and distrusted appointed attorneys. Abbott also volunteered information on his mental state: He said that remaining in detention without a trial date was "depressing" and "wearing on [his] anxiety" and noted that the dosage of his anxiety medication had been decreased in jail for no apparent reason. Despite the medication change, Abbott added that he was not being medicated for "any mental illnesses [he] may have," but he was "dealing with it fairly well" and had been "right on here."

The court again tried to dissuade Abbott and explained that before granting his request to represent himself, it would need to conduct a formal colloquy to ensure that Abbott understood "all the ramifications." Abbott reiterated that he would not work with current counsel, as his stand-by or otherwise, though counsel was willing to continue. The court ruled that counsel could withdraw but ordered another hearing to determine Abbott's "willingness" and "understanding of what it means" to represent himself.

Approximately one month later, in January 2021, the district court opened the subsequent in-person *Faretta* hearing by explaining the purpose: to ensure that Abbott understood "the hazards and disadvantages of representing himself." The court questioned Abbott on his understanding of the charges against him, the potential sentences, criminal law and procedure, and the rules of evidence. But it did not ask for additional information about Abbott's mental health, substance usage, age, formal education, or knowledge of defenses. The court reiterated that Abbott's interests would be best served with appointed counsel before confirming that Abbott wished to represent himself. The court found that Abbott "knowingly, voluntarily waived the right to counsel" and allowed him to proceed pro se. Abbott later pleaded guilty to three counts of bank robbery and one attempt, and was sentenced to 136 months' imprisonment, three years' supervised release, and restitution of $65,356.

We review a "legal determination that a defendant waived counsel de novo, while considering its predicate factual findings for clear error." *United States v. Johnson*,

980 F.3d 570, 576 (7th Cir. 2020) (citing *United States v. Balsiger*, 910 F.3d 942, 951–52 (7th Cir. 2018)). Courts must ensure that a defendant is aware of the perils of forgoing counsel and chooses "with eyes open." *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). To determine whether a defendant chose self-representation consistent with the Sixth Amendment, we examine the entire record and consider: (1) the extent of the district court's formal inquiry into the defendant's decision; (2) the evidence in the record about whether the defendant understood the dangers and disadvantages of self-representation; (3) the defendant's background and experience; and (4) the context of the defendant's decision. *United States v. Banks*, 828 F.3d 609, 615–16 (7th Cir. 2016) (citations omitted).

On appeal, Abbott argues the district court erroneously allowed him to proceed pro se because, he says, the *Faretta* colloquy was deficient, in violation of his right to counsel or to waive that right knowingly and voluntarily. He contends that the court did not assess his concerns about the lawyers who withdrew, nor did it inquire about his mental competence, education level, age, knowledge of defenses to the charges, and familiarity with criminal trial procedure. In particular, Abbott's criticism that the court neglected to ask about his mental competence at that hearing strikes us as valid: Abbott had undergone a dosage change in his medication in recent months, which could have affected his memory or understanding of prior discussions of his Sixth Amendment right. Those discussions did, after all, take place over the course of five months. As such, Abbott's right to intelligently waive counsel would have been better protected had the court raised questions about his mental state *at* the *Faretta* hearing. Similarly, inquiring into Abbott's knowledge of criminal defense during the colloquy, such as the need to preserve issues for appeal, would have further alerted Abbott to the pitfalls of self-representation.

Yet Abbott also acknowledges that courts consider the totality of the circumstances when assessing the adequacy of a *Faretta* inquiry. *See Johnson*, 980 F.3d at 577. Recognizing a district court's superior ability to assess a defendant's desire to represent himself, we have declined "to police too closely the details of district courts' *Faretta* hearings," mandate no magic words for a colloquy to be sufficient, and indeed do not even require a hearing if the record otherwise shows that the defendant knowingly elected to proceed pro se. *United States v. Vizcarra-Millan*, 15 F.4th 473, 486 & n.1 (7th Cir. 2021). Therefore, even if the district court here did not review every potential issue at the *Faretta* hearing itself, it could rely on the myriad other filings and hearings for information relevant to the *Banks* factors. *See Vizcarra-Millan*, 15 F.4th at 486; *see also Banks*, 828 F.3d at 615.

That record shows that the district court did enough to safeguard Abbott's right to a knowing and voluntary waiver of counsel. For instance, at the hearing to consider the third motion to withdraw, the court heard Abbott enumerate his many grievances with his third lawyer specifically and with appointed representation generally. And Abbott affirmatively asserted he understood what he was doing, that he was "right on" mentally, that he was 34 years old, and adamant in wishing to proceed pro se. Further, the court had many reasons to believe that Abbott was firm in his desire to represent himself: Abbott invariably filed motions on his own behalf even while represented and had already run through three attorneys despite the court's attempts to secure compatible counsel for him. *See United States v. Volpentesta*, 727 F.3d 666, 676 (7th Cir. 2013) (upholding inexperienced defendant's invocation of right to proceed pro se after disagreements with counsel). And Abbott's comments at the hearing on the third motion to withdraw and the *Faretta* hearing reflected his unequivocal desire to represent himself despite the district court's consistent warnings against doing so.

Even after Abbott insisted on proceeding pro se and balked at the idea of stand-by counsel, the court conducted a formal colloquy to determine Abbott's knowledge of the law and his case. Abbott's answers, combined with his prior filings and court appearances, demonstrated his rudimentary understanding of criminal procedure and his Sixth Amendment right to self-representation. *See id.* at 677–78; *Iowa v. Tovar*, 541 U.S. 77, 89 (2004) (citing *Faretta*, 422 U.S. at 835) (holding that a defendant need not have a lawyer's skill or knowledge but should be made aware of the dangers of representing himself). Although the *Faretta* colloquy itself could have included a more robust discussion of Abbott's knowledge of defenses and criminal procedure and inquired about his mental state at that point in time, taken with the body of information before the court, the colloquy sufficed to ensure that Abbott's waiver was knowing and voluntary.

AFFIRMED