In the

# United States Court of Appeals
## for the Seventh Circuit

---

No. 23-1410

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEVIN SHIBILSKI,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 20-CR-122-JDP — **James D. Peterson**, *Chief Judge*.

---

ARGUED JANUARY 10, 2024 — DECIDED JUNE 10, 2024

---

Before SYKES, *Chief Judge*, and HAMILTON and LEE, *Circuit Judges*.

SYKES, *Chief Judge*. A grand jury charged Kevin Shibilski with environmental and wire-fraud crimes arising from his operation of three Wisconsin-based companies engaged in the business of recycling electronic equipment. The indictment also included one count of conspiracy to defraud the United States relating to his willful nonpayment of payroll taxes for his employees.

Shibilski pleaded guilty to a single felony count of willful failure to pay employment taxes; in exchange, the government dropped the other charges. Though the case had been dramatically simplified, sentencing proved to be protracted. Shibilski objected to the presentence report's recommendations regarding relevant conduct under the Sentencing Guidelines—notably, the recommendation to hold him responsible for the total amount of unpaid employment taxes for all three companies. To address these objections, the district judge held a seven-hour sentencing hearing, most of which was consumed by the presentation of documents and testimony, including testimony from Shibilski himself. During the evidentiary phase of the hearing, Shibilski's attorney pursued irrelevant and redundant lines of inquiry, prompting the judge to step in to keep him on topic and on track to finish on time.

In the end the judge found Shibilski responsible for the full amount of unpaid taxes. The judge also declined to award credit for acceptance of responsibility under U.S.S.G. § 3E1.1(a), finding that Shibilski had falsely denied responsibility for relevant conduct. After weighing the statutory sentencing factors, the judge imposed a sentence of 33 months in prison, the bottom of the advisory Guidelines range.

Shibilski argues that the judge violated Rule 32(i)(4)(A)(i) of the Federal Rules of Criminal Procedure by unduly curtailing his attorney's presentation of evidence. He also claims that the judge improperly denied credit for acceptance of responsibility under § 3E1.1(a). Finally, he contends that the judge committed procedural error by failing to meaningfully address the statutory sentencing factors. We reject these arguments and affirm.

## I. Background

This case has its roots in concurrent state and federal investigations into environmental and tax crimes occurring at 5R Processors, Ltd., a Wisconsin-based company engaged in the business of recycling electronic equipment. The environmental and tax inquiries led to a broader investigation of the company's operations. What follows is a condensed version of the facts and procedural history of the case; a more detailed account is not necessary to resolve this appeal.

Founded in 1988 by Tom Drake, 5R grew over time to include recycling and storage facilities in Wisconsin and Tennessee. But the company was plagued by cash-flow problems, so in 2011 Drake hired Keven Shibilski as a consultant to help the company find new sources of operating capital. Shibilski had spent most of his professional life in the public sector as a county register of deeds, state senator, and (briefly) state tourism secretary; he had limited relevant business experience.

After two years of fruitless searching, Shibilski proposed to purchase 5R himself in a three-year phased transaction in which he would incrementally acquire Drake's ownership interest while he continued to look for a secure source of operational financing. Drake agreed. As the deal was structured, Shibilski paid nothing to acquire Drake's shares but immediately began running the company. In March 2013 he assumed control of 5R as its CEO and CFO, with a starting salary of about $107,000, which increased to $156,500 by 2015 and $170,500 by 2016. Drake temporarily stayed on as chairman once Shibilski took over, but he had limited involvement because of serious health problems. Shibilski gradually acquired a majority of Drake's shares in a phased buyout in which

Drake received annual "salary" and lump-sum payments from 5R itself.

The company's financial prospects did not improve after Shibilski took the reins in March 2013. His search for operating capital failed, and cashflow problems worsened. In the meantime, Shibilski began paying himself an extra $3,000 per month for office space he leased to the company. He also put his wife on the payroll as a ghost employee; she never came to the office.

In 2014 5R stopped paying required employment taxes to the Internal Revenue Service and the Wisconsin Department of Revenue. In essence, the company was using employees' withheld income and payroll taxes to help stem the deterioration of its financial condition. The nonpayment of taxes eventually drew the attention of state and federal taxing authorities. State tax agents commenced an enforcement action, and an IRS agent conducted a site visit.

In response to the company's large looming liability for unpaid employment taxes, Shibilski created two spinoff companies to carry on 5R's recycling and transportation operations: Pure Extractions Inc., which assumed 5R's recycling business, and Wisconsin Logistics Solutions LLC, which took over 5R's transportation operations. But nothing changed as a functional or operational matter. 5R's assets, employees, and operations were moved to the two new companies, leaving 5R with the liabilities.

At some point along the way, state and federal environmental agencies began investigating the companies for improper storage, transportation, and disposal of hazardous waste from the recycling process. The environmental

inquiries spawned an expanded financial investigation, and law enforcement stepped in. In September 2020 a grand jury returned a 10-count indictment charging Shibilski with environmental and wire-fraud crimes and conspiracy to defraud the United States. The conspiracy charge alleged that from July 2014 through June 2016, Shibilski willfully failed to remit payroll taxes to the IRS for the employees of 5R, Pure Extractions, and Wisconsin Logistics.

In May 2021 a magistrate judge entered a scheduling order setting the case for trial on May 23, 2022, with a final pretrial conference to be held on April 14, 2022. One week before the pretrial conference, the parties reached a plea agreement in which Shibilski agreed to plead guilty to a single felony count—willful failure to pay employment taxes in violation of 26 U.S.C. § 7202—as charged in an information filed that same day. In exchange, the government agreed to dismiss all charges in the indictment. The government also agreed to recommend that Shibilski receive credit for acceptance of responsibility under § 3E1.1(a) of the Guidelines—conditioned, of course, on Shibilski's *actual* acceptance of responsibility. The government reserved the right to withdraw this recommendation if Shibilski engaged in conduct inconsistent with acceptance of responsibility.

As a factual basis for the plea, the agreement mentioned only a portion of the unpaid taxes—$197,458, which reflected the payroll taxes that had been withheld from the paychecks of employees at Pure Extractions and Wisconsin Logistics but not remitted to the IRS. Shibilski acknowledged responsibility for this portion of the tax loss as part of the factual basis for his plea; the agreement reserved a more complete accounting

of relevant conduct until sentencing. Shibilski entered his guilty plea a month later.

As expected, the presentence report ("PSR") calculated a much larger tax loss as relevant conduct. The probation officer recommended that the court find Shibilski responsible for a total of $858,051 in tax losses. This figure included the amount Shibilski had acknowledged in the plea agreement, plus (1) the employer's share of payroll taxes owed but never paid for employees of Pure Extractions and Wisconsin Logistics; and (2) *all* employment-related taxes for 5R—the unpaid employees' share, which had been withheld but never paid to the IRS, *and* the employer's share.

Shibilski objected to the PSR's calculation of relevant conduct (among other objections). He insisted, implausibly, that he had not been in control of financial matters for the businesses—particularly not 5R's financial operations—and so should not be held responsible for the total amount of unpaid payroll taxes.

To resolve the objections, the district judge scheduled the sentencing hearing over two days in February 2023, setting aside four hours on the first day and three hours on the second day. On the first day, the judge began by discussing the timeframe and parameters for the evidentiary presentations to ensure that the parties would use the allotted time efficiently. The judge estimated that witness testimony and the introduction of exhibits would consume the entirety of the first day. Shibilski's attorney told the judge that his client would testify; the prosecutor said that he would trim his witness list to accommodate the defendant's testimony and the court's schedule.

Once the witness testimony was underway, Shibilski's attorney immediately engaged in irrelevant and repetitious lines of inquiry. After the first witness, the judge urged defense counsel not to waste time on irrelevancies. From that point on, the judge periodically stepped in to instruct Shibilski's attorney to avoid redundant questions or to move things along. As the clock ticked down toward the end of the first day, the judge said he would extend that day's session for an extra 20 minutes or so, but he made it clear that he would not keep everyone in the courthouse beyond that time. Shibilski took the stand late that afternoon with only 20 minutes of hearing time remaining. The judge stuck to his timeline, halted Shibilski's direct testimony when the time expired, and advised the parties that the hearing would continue with cross-examination on the morning of day two.

The hearing resumed on day two with Shibilski's cross-examination, redirect by defense counsel, and recross by the prosecutor. In all, Shibilski was on the witness stand for a little over an hour. The judge then invited arguments from the attorneys about what the evidence had shown on the central dispute concerning Shibilski's control of financial matters for the three companies. After exhausting that subject, the attorneys presented their sentencing arguments, uninterrupted by the judge except to the extent that he had questions. The judge then turned to the defendant for allocution. After cursory remarks about accepting responsibility, Shibilski spent most of his allocution statement complaining about the prosecution, shifting blame to his codefendants and others, minimizing his role in the crime, and portraying himself as a victim of character assassination by the government and fraud by others who were involved in the business.

The judge ultimately rejected Shibilski's objections and found him responsible for the entire tax loss as described in the PSR, basing his ruling on the "unequivocal" evidence that Shibilski had been in control of the financial operations of all three companies during the relevant period. Relying on that same evidence, the government withdrew its recommendation for an offense-level reduction under § 3E1.1(a). The judge agreed that credit for acceptance of responsibility was unwarranted notwithstanding the guilty plea. The judge found that Shibilski had falsely denied relevant conduct, blamed others, and otherwise minimized his role in the offense, all of which were inconsistent with acceptance of responsibility. The judge thus declined to award the two-point offense-level reduction under § 3E1.1(a).

These rulings produced a total offense level of 20, which when combined with a criminal history category of I yielded an advisory imprisonment range of 33 to 41 months. After weighing the sentencing factors listed in 18 U.S.C. § 3553(a), the judge imposed a sentence of 33 months in prison.

## II. Discussion

Shibilski raises three claims of sentencing error, arguing that the judge (1) violated Rule 32(i)(4)(A)(i) by unduly curtailing his attorney's presentation of evidence; (2) wrongly denied credit for acceptance of responsibility under § 3E1.1(a); and (3) committed procedural error by failing to meaningfully address the § 3553(a) sentencing factors.

The first argument misunderstands the rule and is unsupported by the record. Rule 32(i)(4)(A)(i) states only that the judge "must provide the defendant's attorney an opportunity to speak on the defendant's behalf." FED. R. CRIM. P.

32(i)(4)(A)(i). The judge complied with this requirement. On day two of the hearing, he gave Shibilski's attorney ample time to present a sentencing argument. Counsel fully availed himself of the opportunity—first by speaking at length when the judge invited the attorneys to discuss what the evidence had shown about Shibilski's control of the three companies, and later by raising multiple arguments in mitigation when the judge entertained sentencing argument from each side. The judge did nothing to curtail or cut off counsel's opportunity to speak on Shibilski's behalf. The record conclusively refutes any argument to the contrary.

Shibilski's argument appears to rest on a fundamental misreading of the rule. His complaint is that the judge unduly restricted his presentation of evidence during the sentencing hearing. A different part of Rule 32 pertains to evidentiary submissions at sentencing. Rule 32(i)(2) provides that the judge *may* permit the parties to introduce evidence on objections to the PSR—not *shall* or *must*. Submission of evidence at sentencing is thus entrusted to the district court's discretion. *See United States v. Cunningham*, 883 F.3d 690, 699 (7th Cir. 2018). Controlling the scope of witness testimony and setting reasonable time limits, as the judge did here, is perfectly consistent with the court's exercise of this discretionary authority.

Shibilski next argues that the judge wrongly denied credit for acceptance of responsibility under § 3E1.1(a). A defendant may earn a two-level reduction in his Guidelines offense level if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). To determine whether to apply this adjustment, the judge may consider whether the defendant has "truthfully admitt[ed] the conduct compromising the

offense(s) of conviction" and "truthfully admitt[ed] or not falsely den[ied] any additional relevant conduct for which [he] is accountable." *Id.* cmt. n.1. A defendant who falsely denies or frivolously contests relevant conduct "has acted in a manner inconsistent with acceptance of responsibility." *Id.* Moreover, attempts by the defendant to minimize his involvement in the offense are "sufficient to deny a reduction for acceptance of responsibility, even when the defendant has pleaded guilty." *United States v. Major*, 33 F.4th 370, 382 (7th Cir. 2022).

It's the defendant's burden to prove by a preponderance of the evidence that he qualifies for the § 3E1.1(a) adjustment, and the district judge's findings in this regard are entitled to "great deference." § 3E1.1 cmt. n.5. At its core the § 3E1.1(a) credit is based on a credibility judgment that the sentencing judge is best equipped to make. *Id.* We review the judge's findings for clear error and will reverse only if we are left with the "definite and firm conviction" that a mistake was made. *United States v. Collins*, 796 F.3d 829, 835 (7th Cir. 2015) (internal quotation marks omitted).

We see no basis to disturb the judge's § 3E1.1(a) ruling here. Shibilski spills much ink over whether his objections to the PSR were legal challenges or good-faith factual challenges. We do not need to parse the record on this point. Shibilski's own words—both from the witness stand and in his allocution statement—confirm that the judge had ample reason to deny credit for acceptance of responsibility.

Despite a lengthy paper trail and robust testimony establishing that he controlled financial matters for 5R and the two spinoff companies, Shibilski persisted in falsely denying responsibility for the total amount of unpaid employment taxes.

Though he made passing reference to his "unequivocal" acceptance of responsibility during his allocution, he focused mainly on minimizing his role, blaming his co-defendants and the IRS, and painting himself as the victim of fraud by others. He assailed the prosecution as an attack on his character. He suggested that he had taken the fall for the misdeeds of his codefendants, complaining that they had not "pa[id] a nickel in … back taxes." He speculated that he had been charged because he was the "last person standing." He deflected responsibility for his conduct, complaining that his codefendants and others "took money, they took the company, and they boogied, and they're going to point their finger at me and [] say I behaved dishonorably? Not true. I did not behave dishonorably, Your Honor."

He continued to cast aspersions, telling the judge that he and his wife were the only ones affiliated with 5R who "paid a price." He walked this comment back a bit when the judge reminded him that his codefendants received prison time and one was also ordered to pay $3 million in restitution for related environmental crimes. But in the next breath Shibilski dismissed the codefendant's restitution obligation as insignificant. Simply put, Shibilski's persistent refusal to take ownership of his own actions amply justified the denial of credit under § 3E1.1(a). As the judge explained, he "blamed everybody but himself."[1]

---

[1] Shibilski also complains that he lacked notice that the court might not award credit for acceptance of responsibility. This is a nonstarter. The plea agreement and the guilty-plea colloquy provided clear notice that the court would rule on all Guidelines questions and determine the appropriate sentence.

Shibilski's final argument is a procedural claim that the judge failed to meaningfully consider his principal arguments in mitigation under § 3553(a)—specifically, arguments concerning his lack of criminal history, his public service and reputation, his role as a caregiver for his aging mother, and the sentences of other § 7202 offenders. This argument is frivolous.

The judge need not march through the § 3553(a) factors in a "checklist fashion" at sentencing. *United States v. Banks*, 828 F.3d 609, 618 (7th Cir. 2016). What's required is a statement of reasons showing that the judge engaged in an individualized assessment, considered the defendant's principal mitigation arguments—"even if implicitly and imprecisely"—and explained the sentencing decision in sufficient detail to permit meaningful appellate review. *Id.* (internal quotation marks omitted).

The judge said more than enough to discharge these obligations. He carefully considered the mitigating aspects of Shibilski's background, including his public service, reputation in his community, and the circumstances regarding his infirm mother. The judge also addressed Shibilski's argument about sentences for other § 7202 offenders, explaining that he consistently imposed prison sentences in tax-fraud cases. On this point specifically, it was not necessary for the judge to say more; indeed, he was not required to directly address and weigh the possibility of unwarranted sentencing disparities under § 3553(a)(6). We have repeatedly explained that the Guidelines "are themselves an anti-disparity formula." *United States v. Sanchez*, 989 F.3d 523, 540 (7th Cir. 2021) (internal quotation marks omitted). A sentence within the Guidelines

range "necessarily complies with § 3553(a)(6)." *Id.* at 541 (internal quotation marks omitted).

In short, no procedural error occurred. The judge thoughtfully considered the § 3553(a) factors and Shibilski's principal arguments in mitigation, and his explanation for the within-Guidelines sentence was clearly sufficient.[2]

AFFIRMED

---

[2] After we heard oral argument, Shibilski sought a sentence reduction based on new, retroactive amendments to the Sentencing Guidelines. The judge expressed a willingness to reduce the sentence by two months, and Shibilski notified us of this indicative ruling. FED. R. APP. P. 12.1. The resolution of this appeal clears the way for the proposed sentence modification.